Opinion
HASTINGS, J.
This is an appeal from an order denying a preliminary injunction sought by appellants (six adults and six minor children) to prevent the Pasadena City Board of Education, the governing body of the Pasadena Unified School District, from transferring the minor appellants from the fundamental schools which they then attended to regular district schools solely on the ground that their parents had refused or withdrawn written permission for school personnel to use corporal punishment against the minors. In addition, five of the adult appellants, as taxpayers whose property taxes help finance the Pasadena Unified School District, sought to restrain respondents from using public funds to transfer any student from a Pasadena fundamental school solely on the grounds that the student’s parent or guardian had refused or withdrawn written permission for school personnel to use corporal>1 punishment against the student, or to require parental permission for corporal punishment as a condition of a child’s enrollment in a fundamental school. Appellants argue that respondents’ policy of requiring parents to give permission for school personnel to employ corporal punishment against their children as a condition of enrollment violates the rights granted to all public school parents and children by *55 Education Code sections 10854 and 10855, as amended in 1975, effective January 1, 1976.[1]
Facts
The Pasadena Unified School District operates 23 primary and elementary schools, 3 junior high schools, 3 senior high schools, and several continuation and opportunity schools in its regular educational program. Beginning with the 1973-1974 school year, the district also operates, in addition to the regular schools, five schools where pupils are enrolled upon the voluntary application of their parents or guardians. Four of these five voluntary schools are known as “fundamental schools.” Admission to these schools is by special application; however, once a child has been admitted to and enrolled in a fundamental school, the child usually continues therein from year to year without reapplication. In the application for enrollment the special principles of the school are set forth as: “1. Discipline, respect, patriotism emphasized. 2. Specific dress codes for pupils and teachers. 3. Homework at all levels, including Kindergarten. 4. Basic math [rather than ‘new math’] requiring rigorous drill and practice. 5. Reading instruction based on phonics. 6. Corporal punishment and detention as acceptable forms of behavior control.” The “Acceptance of Assignment” form for the fundamental schools basically reiterates the above-described features and adds the following: “1. Emphasis on fundamentals—reading, writing, spelling, and arithmetic. 2. Classes ability grouped. 3. Letter grades given periodically in all basic subjects. 4. Strict discipline maintained. Paddling and detention permitted.” Acceptance of these policies and practices by parents is a condition of the initial and continued enrollment of their children in the fundamental schools.
In the present action all of the adult appellants are parents whose children (the minor appellants) were enrolled in fundamental schools during the 1975-1976 school year. Four of the six children had attended these schools since September of 1974. During January and February of 1976, after the amendments to Education Code sections 10854 and 10855 became effective, school officials mailed letters to the adult appellants, requesting them to grant written permission for school personnel to use corporal punishment against their children or to request and accept transfer of their children to other nonfundamental schools within the *56 district. The letters specifically stated that permission was a “condition of [the] child’s continued enrollment in fundamental schools.” All of the adult appellants objected to granting such permissions. Several of them refused to sign the permission form, while the others signed with reservations which were not acceptable.
On March 23, 1976, appellants filed their third amended complaint for temporary restraining order and injunctive relief. A hearing on appellants’ application for a preliminary injunction was held on April 22, 1976. The verified pleadings and declaration were admitted into evidence. Following oral argument the request for a preliminary injunction was denied.
Issue
The issue on appeal is whether the use of corporal punishment[2] may properly be a condition to a child’s enrollment and attendance at a fundamental school.
Discussion
Education Code Section 10854 (now § 49000) was amended in 1975 to read as follows:
“The governing board of any school district may adopt rules and regulations authorizing teachers, principals, and other certificated personnel to administer reasonable corporal or other punishment to pupils when such action is deemed an appropriate corrective measure except and to the extent that such action is permissible as provided in Section 10855 [now §49001].”
Education Code section 10855 (now § 49001) stated:
“(a) Corporal punishment shall not be administered to a pupil without the prior written approval of the pupil’s parent or guardian. The written approval shall be valid for the school year in which it is submitted but may. be withdrawn by the parent or guardian at any time.
*57 “(b) If a school district has adopted a policy of corporal punishment pursuant to Section 10854 [now § 49000], at the beginning of the first semester or quarter of the regular school term the governing board of each such school district shall notify the parent or guardian in a manner similar to that provided pursuant to Section 10921 [now § 48980], that corporal punishment shall not be administered to a pupil without the prior written approval of the pupil’s parent or guardian.”
Before the enactment of the amendments the local governing board of the school districts adopted rules and regulations authorizing reasonable corporal punishment when such action was deemed to be an appropriate corrective measure. Section 10855, however, prohibited corporal punishment from being administered to educationally handicapped, physically handicapped, or mentally retarded pupils without the prior written consent of the pupil’s parent or guardian. Under section 10855, as amended, (now § 49001), corporal punishment of any pupil is prohibited unless prior written approval of the pupil’s parent or guardian is obtained. Such approval is valid for the school year in which it is submitted but may be withdrawn at any time. Section 10854 (now § 49000) was amended to provide that school boards may adopt rules authorizing reasonable corporal punishment in cases where, parental approval has been obtained.
Respondents argue that requiring consent to the use of corporal punishment as a condition to enrollment in fundamental schools does not violate sections 10854 and 10855 (now §§ 49000 and 49001) since a local school board has absolute discretion in assigning students to particular public schools. They rely on San Francisco Unified School Dist. v. Johnson, 3 Cal.3d 937 [92 Cal.Rptr. 309, 479 P.2d 669], in which the court held that school districts have the authority to assign students to particular schools in order to end racial separation, and on Stratton v. Board of Trustees, 28 Cal.App.3d 419 [104 Cal.Rptr. 715], which upheld the power of local school boards to establish school attendance zones. They point out that enrollment in a fundamental school is not a matter of right but is solely a matter of choice based upon voluntary application and the voluntary consent to the policies and practices followed in these schools. We disagree with respondents’ argument. Furthermore; the above cases, upon which they rely, are inapposite.
A school district is an agency of limited authority, which may exercise only those powers granted by statute. (San Juan Teachers Assn. v. San Juan Unified Sch. Dist., 44 Cal.App.3d 232, 250 [118 Cal.Rptr. *58 662].) “Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to strike down such regulations. [Citations.]” (Morris v. Williams, 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697].) Former Education Code section 1052 (now § 35291) provides that: “The governing board of any school district shall prescribe rules not inconsistent with law or with the rules prescribed by the State Board of Education, for the government and discipline of the schools under its jurisdiction.” (Italics added.) Education Code section 7502 (now § 51002) provides as follows: “The Legislature hereby recognizes that, because of the common needs and interests of the citizens of this state and the nation, there is a need to establish a common state curriculum for the public schools, but that, because of economic, geographic, physical, political and social diversity, there is a need for the development of educational programs at the local level, with the guidance of competent and experienced educators and citizens. Therefore, it is the intent of the Legislature to set broad minimum standards and guidelines for educational programs, and to encourage local districts to develop programs that will best fit the needs and interests of the pupils, pursuant to stated philosophy, goals, and objectives.” Section 7503.5[3] states that: “On or after January 1, 1976, the governing board of any school district, including the governing board of any community college district, may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established.”
 Respondents cannot operate any school, fundamental or in another category, in a manner inconsistent with any law. They must meet the “broad minimum standards and guidelines” set by the Legislature. Neither school boards nor any other administrative agency may set additional terms or conditions which frustrate rights created by statute. (See Syrek v. California Unemployment Insurance Appeals Board, 54 Cal.2d 519, 532 [7 Cal.Rptr. 97, 354 P.2d 625]; Ellis v. Board of Education, 27 Cal.2d 322, 324-325 [164 P.2d 1]; Cabrillo Community College Dist. v. California Junior College Assn., 44 Cal.App.3d 367, 371-372 [118 Cal.Rptr. 708].) In amending sections 10854 and 10855 (now §§ 49000 and 49001), the Legislature provided the school districts with the choice of (1) electing not to engage in corporal punishment, or (2) adopting rules authorizing corporal punishment provided they allow parents to grant or withhold consent thereto. Clearly, the Legislature *59 intended that every parent or guardian in every public school should have the right to withhold consent to corporal punishment, including parents of those children attending fundamental schools. All schools must comply with the requirements of sections 10854 and 10855 (now §§ 49000 and 49001).
Respondents argue that “[c]onsent to administration of corporal punishment has been and continues to be a cornerstone of one of the stated philosophies, goals and objectives of the fundamental schools—the maintenance of strict discipline among all pupils attending such schools.” It is not necessary for us to agree or to disagree with this concept. The Legislature has specifically declared that corporal punishment may not be applied in any school to a student without parental consent. The school authorities are to conduct their schools within the ambit of the law. It is the responsibility of the Legislature to enact the law and it is our obligation to determine whether the law is being complied with. The Legislature has obviously considered the problem presented and determined that corporal punishment is not a prerequisite to strict discipline,[4] and its elimination as a mandatory requirement does not mean an end to the disciplinary phase of the fundamental schools program. Discipline can be accomplished by other forms of punishment such as detention,[5] suspension, or transfer to a nonfundamental school within the district.
The dissent places emphasis on that portion of section 10855 (now § 49001) that permits a parent to withhold or withdraw consent to corporal punishment. The issue before us, however, requires consideration and understanding of the entire section. The act affirmatively denies the use of such punishment absent consent. In other words, the broad policy is against paddling unless specifically authorized. Unfortunately, the dissent fails to recognize that public schools are public schools regardless of the format or manner of teaching. The dissent’s argument is more appropriately addressed to private vs. public schools. The “fundamental school,” as a public school, has no more nor less right to require consent for corporal punishment than a “regular school.” It is clear the Legislature has decreed that the 3 R’s are not taught from the bottoms up.
*60 Our decision in favor of appellants on this issue makes it unnecessary to discuss the other issues raised.
The order appealed from is reversed with directions to the trial court to issue the preliminary injunction.
Stephens, Acting P. J., concurred.

As of April 30. 1977. Education Code sections 10854 and 10855 became Education Code sections 49000 and 49001. respectively. The Education Code was reorganized and reenacted by Statutes 1976. chapter 1010. amended by Statutes 1976. chapter 1011.

Assembly Concurrent Resolution No. 69, Statutes 1973 (Reg. Sess.) resolution chapter 132, pages 3264-3265, requested a survey concerning the administration of corporal punishment in public schools in view of section 10854 of the Education Code. The report, after citing section 10854, states: “Corporal punishment is defined as the act of inflicting bodily punishment. (This usually means the use of a paddle or similar instrument.)"

Currently sections 35160 and 72233.

The Legislature could easily have provided in the statute that fundamental schools were excluded from the corporal punishment requirement. The statute was passed after the schools were organized and their standards for admission were well known.

See California Administrative Code, title 5, sections 352 and 353 concerning detention restrictions.