[No. B001806. Second Dist., Div. Three. Nov. 1, 1984.]

JOHN SLAYTON et al., Plaintiffs and Appellants, v.
POMONA UNIFIED SCHOOL DISTRICT et al., Defendants and
Respondents.

## Counsel

Gronemeier & Barker, Dale L. Gronemeier, Brenda J. Penny and Nathaniel J. Weinstock for Plaintiffs and Appellants.

Kinkle, Rodiger & Spriggs and James L. Price for Defendants and Respondents.

## Opinion

## ARABIAN, J.—

### INTRODUCTION

Appellants, 12 parents and their children (hereinafter referred to as petitioners), obtained a peremptory writ in the trial court prohibiting respondents, the Pomona Unified School District and 4 administrators of the Philadelphia School (collectively referred to herein as respondents), from engaging in certain conduct which violated petitioners' rights under California statutes and the state and federal Constitutions. At the conclusion of the proceedings petitioners applied for attorney fees under the private attorney general statute (Code Civ. Proc., § 1021.5). Petitioners' request for fees was denied by the trial court and they appealed.[1] We reverse the trial court's order of denial.

### FACTS

Petitioners, represented by *pro bono publico* attorneys, initiated this mandate proceeding in the trial court in order to end the illegal conduct of four

---

[1] Respondents did not appeal from the trial court's order (peremptory writ) which prohibited their unlawful conduct. Therefore, although respondents attempt to reargue the merits of the case on this appeal, we must accept the trial court's findings and ruling, which are now final, as valid.

school administrators who had responsibility for the Philadelphia School, one of the school district's "fundamental" schools. The school district had repeatedly rebuffed petitioners' efforts to bring the administration of the school into compliance with the law.

The peremptory writ issued by the trial court stated that respondents had failed to perform their legal duties in the following respects:

1. By refusing to comply with Education Code section 48900,[2] in that respondents suspended and threatened to suspend students for academic failures, for their parents' failure to sign discipline slips and for other infractions not enumerated in section 48900, as required for suspension.

2. By refusing to comply with Education Code section 48900.2,[3] in that respondents suspended and threatened to suspend students without exhausting other means of correction.

---

[2]At the time of the peremptory writ was issued, Education Code section 48900 provided: "A pupil shall not be suspended from school nor recommended for expulsion unless the principal determines that the pupil has:

"(a) Caused or attempted to cause damage to school property or stolen or attempted to steal school property; or

"(b) Caused or attempted to cause damage to private property or stolen or attempted to steal private property; or

"(c) Caused, attempted to cause, or threatened to cause physical injury to another person; or

"(d) Possessed, sold or otherwise furnished any firearm, knife, explosive, or other dangerous object unless in the case of possession of any such object, the pupil had obtained written permission from a certificated school employee, which is concurred in by the principal or the designee of the principal; or

"(e) Unlawfully possessed, used, sold, or otherwise furnished, or been under the influence of any controlled substance, as defined in Section 11007 of the Health and Safety Code, alcoholic beverage, or intoxicant of any kind; or

"(f) Possessed or used tobacco, except as provided in Section 48903.6; or

"(g) Committed an obscene act or engaged in habitual profanity or vulgarity; or

"(h) Disrupted school activities or otherwise willfully defied the valid authority of supervisors, teachers, or administrators.

"No pupil shall be suspended or expelled for any of the acts enumerated unless such act is related to school activity or school attendance. A pupil may be suspended or expelled for acts which are enumerated in this section and related to school activity or attendance which occur at any time, including but not limited to: (1) while on school grounds; (2) while going to or coming from school; (3) during the lunch period, whether on or off the campus; or (4) during, or while going to or coming from, a school sponsored activity.

"It is the intent of the Legislature that alternatives to suspensions or expulsion be imposed against any pupil who is truant, tardy, or otherwise absent from assigned school activities."

[3]At the time the peremptory writ was issued, Education Code section 48900.2 provided: "Suspension shall be imposed only when other means of correction fail to bring about proper conduct, provided that a pupil may be suspended for any of the reasons enumerated in Section 48900 upon a first offense if the principal determines that the pupil's presence causes a danger to persons or property or is a threat to disrupting the instructional process."

3. By failure to comply with article I, section 2, of the California Constitution and the First Amendment of the United States Constitution,[4] in that respondents required as a condition of enrollment that parents of students profess loyalty to the philosophy of Philadelphia School.

4. By failure to comply with Education Code section 49067,[5] in that respondents did not notify the parents of students when it became apparent that the students were in danger of failing courses.

5. By failure to comply with Education Code section 49001,[6] in that respondents administered corporal punishment to students without prior written approval of the parents or guardians of the students.

The peremptory writ commanded that respondents immediately comply with the requirements of:

1. Education Code section 48900, by suspending or threatening to suspend students from school only for the reasons enumerated therein.

2. Education Code section 48900.2, by suspending or threatening to suspend students only after the failure of other means of correction.

3. The First Amendment to the Constitution of the United States and article I, section 2, of the California Constitution, by not predicating admission to and attendance at school upon any parental affirmation of belief in ideas.

---

[4]Article I, section 2 guarantees: "(a) Every person may freely speak, write and publish his or her sentiments on all subjects, being responsible for the abuse of this right. A law may not restrain or abridge liberty of speech or press."

[5]At the time the peremptory writ was issued, Educational Code section 49067 provided: "The governing board of each school district shall prescribe regulations requiring the evaluation of each pupil's achievement for each marking period and requiring a conference with, or a written report to, the parent of each pupil whenever it becomes evident to the teacher that the pupil is in danger of failing a course. The refusal of the parent to attend the conference, or to respond to the written report, shall not preclude failing the pupil at the end of the grading period.

"Notwithstanding the provisions of subdivision (a) of Section 49061, the provisions of this section shall apply to the parent of any pupil without regard to the age of the pupil."

[6]Education Code section 49001 provides: "(a) Corporal punishment shall not be administered to a pupil without the prior written approval of the pupil's parent or guardian. The written approval shall be valid for the school year in which it is submitted but may be withdrawn by the parent or guardian at any time.

"(b) If a school district has adopted a policy of corporal punishment pursuant to Section 49000, at the beginning of the first semester or quarter of the regular school term the governing board of each such school district shall notify the parent or guardian in a manner similar to that provided pursuant to Section 48980 that corporal punishment shall not be administered to a pupil without the prior written approval of the pupil's parent or guardian."

4. Education Code section 49067, by having a conference with or a written report to the parents of each student whenever it becomes evident to the teacher that a student is in danger of failing a course.

5. Education Code section 49001, by not administering corporal punishment to a student without the prior written approval of the student's parent or guardian.

The trial court denied petitioners' relief in regard to respondents' alleged failure to comply with state requirements concerning maintenance and accessibility of student records. (Ed. Code, §§ 49062, 49065; Cal. Admin. Code, tit. 5, §§ 431, subd. (c)(1), 433, subd. (b).)[7]

At the hearing on respondents' motion for reconsideration (Code Civ. Proc., § 1008) and petitioners' motion for private attorney general attorney fees (Code Civ. Proc., § 1021.5), the trial court indicated that it intended to grant petitioners' request for attorney fees.[8] At the conclusion of the hearing, the court took the motions under submission. Twelve days later, the trial court, without explanation, denied both motions. Petitioners appealed from that portion of the trial court's ruling which denied their request for attorney fees pursuant to section 1021.5.

## ISSUE

The only issue presented by this case is whether the trial court abused its discretion in failing to award attorney fees under the private attorney general doctrine codified in Code of Civil Procedure section 1021.5.

## DISCUSSION

■ Section 1021.5 of the Code of Civil Procedure provides for court-awarded attorney fees under a private attorney general theory. (*Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142 [185 Cal.Rptr. 232, 649 P.2d 874]; see *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303].) Code of Civil Procedure section 1021.5 provides: "Upon motion, a court may award attorney's fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a

---

[7]Early in the litigation petitioners abandoned another issue regarding respondents' allegedly arbitrary grading and grade placement practices because of a perceived difficulty of proof.

[8]The trial court stated: "The motion for attorney fees I intend to grant that. The question is how much."

large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any. With respect to actions involving public entities, this section applies to allowances against, but not in favor of, public entities, and no claim shall be required to be filed therefor.''

The private attorney general doctrine "rests upon the recognition that privately initiated lawsuits are often essential to the effectuation of the fundamental public policies embodied in *constitutional* or *statutory* provisions . . . . [W]ithout some mechanism authorizing the award of attorney fees, private actions to enforce such important public policies will as a practical matter frequently be infeasible.'' (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 933 [154 Cal.Rptr. 503, 593 P.2d 200], italics added.)

The decision whether an award of attorney fees under the attorney general theory is justified rests initially with the trial court. (*Id.,* at pp. 938, 940-941, 942.) The trial court, "utilizing its traditional equitable discretion (now codified in § 1021.5), must realistically assess the litigation and determine, from a practical perspective'' (*id.,* at p. 938) whether the statutory criteria have been met (*Baggett* v. *Gates, supra,* 32 Cal.3d at p. 142). In the instant case, as in *Baggett* v. *Gates,* "the trial court had to evaluate whether [petitioners'] action: (1) served to vindicate an important public right; (2) conferred a significant benefit on the general public or a large class of persons; and (3) imposed a financial burden on [petitioners] which was out of proportion to their individual stake in the matter.'' (*Ibid.*) Since petitioners' action did not produce any monetary recovery, subsection "(c)'' of section 1021.5 is not applicable. (See *id.,* at p. 142, fn. 17.)

Where, as here, the decision on the issue is within the trial court's discretion, its determination will be reversed only if there was a prejudicial abuse of discretion. (32 Cal.3d at pp. 142-143.) " ' ' "To be entitled to relief on appeal . . . it must clearly appear that the injury resulting from such a wrong is sufficiently grave to amount to a manifest miscarriage of justice. . . ." ' '' [Citation.] . . . '[D]iscretion may not be exercised whimsically and, accordingly, reversal is appropriate "where no reasonable basis for the action is shown.'' [Citation.]' [Citations.]'' (*Id.,* at p. 143.)

Here, as in *Baggett* v. *Gates, supra,* 32 Cal.3d 128, an analysis of petitioners' action leads to the inescapable conclusion that there was no reasonable basis for the trial court's denial of petitioners' motion for attorney fees under a private attorney general theory. (*Id.,* at p. 143.) Petitioners meet

all the statutory requirements for an award of attorney fees under section 1021.5.

### 1. *"[S]uccessful party."*

█ Respondents urge that an award of attorney fees would be improper because petitioners were not "successful" within the meaning of section 1021.5. Respondents' argument is based on the fact that the trial court did not rule in favor of petitioners on every issue litigated. A similar contention was made by the defendants in *Folsom* v. *Butte County Assn. of Governments* (1982) 32 Cal.3d 668 [186 Cal.Rptr. 589, 652 P.2d 437], because, inter alia, defendants' motion for partial summary judgment was, in part, resolved in their favor. (*Id.*, at pp. 684-685.) In rejecting defendants' contention, the Supreme Court observed, "common sense dictates that the determination of success under section 1021.5 must depend on more than mere appearance." (*Id.*, at p. 685.)

"The critical fact is the impact of the action, not the manner of its resolution. If the impact has been the 'enforcement of an important right affecting the public interest' and a consequent conferral of a 'significant benefit on the general public or a large class of persons' a section 1021.5 award is not barred. . . ." (32 Cal.3d at p. 685.) That is true even if the case is won on a preliminary issue (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 938) or because it was settled before trial (*Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428, 436 [159 Cal.Rptr. 473]). (See *Folsom* v. *Butte County Assn. of Governments, supra,* 32 Cal.3d at p. 685.) And in *Daniels* v. *McKinney* (1983) 146 Cal.App.3d 42, 55 [193 Cal.Rptr. 842], the Court of Appeal quoted *Hensley* v. *Eckerhart* (1983) 461 U.S. 424, 440 [76 L.Ed.2d 40, 55, 103 S.Ct. 1933] to hold that where " 'the lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fees reduced simply because the . . . court did not adopt each contention raised.' " (Italics omitted.)

Here, petitioners were challenging a persistent pattern of disregard for law in the administration of the Philadelphia School. The trial court entered judgment in petitioners' favor on all but one of the litigated issues, the alleged failure of respondents to comply with state requirements in regard to maintenance and accessibility of student records. The petitioners were successful in obtaining a peremptory writ which prohibited respondents from requiring a parental "loyalty oath" as a condition of student admission, from inflicting corporal punishment without parental permission, from suspending students for academic deficiencies or other reasons not permitted by statute, from suspending students without first exhausting other means,

and from neglecting to notify parents when a student was in danger of failing a course.

A pragmatic assessment of the outcome of this case can lead to only one conclusion—that petitioners are "successful parties" for purposes of an award of attorney fees under section 1021.5.

2. *"[I]mportant right affecting the public interest."*

■    Section 1021.5 "provides no concrete standard to test against which a court may determine whether the right vindicated in a particular case is sufficiently 'important' to justify a private attorney general fee award. . . ." (*Woodland Hills Residents Assn., Inc. v. City Council, supra*, 23 Cal.3d at p. 935.) However, our Supreme Court has observed that the private attorney general doctrine may be applied to vindicate both constitutional and statutory rights. (*Ibid.*) But not all statutory rights are of sufficient importance to be encompassed within section 1021.5. "[T]he statute directs the judiciary to exercise judgment in attempting to ascertain to the 'strength' or 'societal importance' of the right involved." (*Ibid.*) In determining the importance of the particular rights vindicated, "courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Id.,* at p. 936.)

Respondents' challenge to petitioners' assertion that their action vindicated "important rights affecting the public interest" is essentially a reargument of the substantive issues on which they lost in the trial court and which are not reviewable by this court, because respondents failed to appeal.

The peremptory writ issued by the trial court contained a finding that respondents violated the First Amendment of the United States Constitution and article I, section 2, of the California Constitution. Thus, this litigation enforced the people's fundamental right of free expression guaranteed by both the state and federal Constitutions. (See *Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 318 [193 Cal.Rptr. 900, 667 P.2d 704].) " 'The determination that the public policy vindicated is one of constitutional stature . . . establishes the first of the . . . elements requisite to the award (i.e., the relative societal importance of the public policy vindicated).' [Citation.]" (*Ibid.*)

We turn then to the question whether the student and parental rights contained in Education Code sections 48900, 48900.2, 49001 and 49067 are also "important rights" encompassed by section 1021.5. In *Serrano v. Priest* (1976) 18 Cal.3d 728 [135 Cal.Rptr. 345, 557 P.2d 929], cert. den. (1977) 432 U.S. 907 [53 L.Ed.2d 1079, 97 S.Ct. 2951], the Supreme Court

determined that "education is a fundamental interest" of the students of this state which, when affected by a suspect classification (discrimination in educational opportunity on the basis of district wealth), must be examined under state constitutional provisions with "that strict and searching scrutiny appropriate to such a case." (*Id.*, at p. 766.)

Respondents urge that education may be a "fundamental interest," but it is not a fundamental or important right. Respondents' argument lacks substance and merit. California has extended the *right* to an education by virtue of two constitutional provisions, one calling for legislative encouragement of education (Cal. Const., art. IX, § 1)[9] and the other requiring the Legislature to create a system of "free schools" in each district of the state (Cal. Const., art. IX, § 5).[10] It has also extended the right to an education by a statutory prescription for a compulsory full-time education for all persons between the ages of 6 and 16 (Ed. Code, § 48200).[11] The early case of *Ward* v. *Flood* (1874) 48 Cal. 36, considered the provisions of the Constitution of 1849 relative to educational affairs which, in all material respects, were similar to the present Constitution. The Supreme Court said: "The opportunity of instruction at public schools is afforded the youth of the state by the statute of the state, enacted in obedience to the special command of the constitution of the state, directing that the legislature shall provide for a system of common schools, by which a school shall be kept up and supported in such district, at least three months every year, etc. (art. XIX, sec. 3).[12] The advantage or benefit thereby vouchsafed to each child, of attending

[9]Article IX, section 1, of the California Constitution provides: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement."

[10]Article IX, section 5, of the California Constitution provides: "The Legislature shall provide for a system of common schools by which a free school shall be kept up and supported in each district at least six months in every year, after the first year in which a school has been established."

[11]Education Code section 48200 provides: "Each person between the ages of 6 and 16 years not exempted under the provisions of this chapter is subject to compulsory full-time education. Each person subject to compulsory full-time education and each person subject to compulsory continuation education not exempted under the provisions of Chapter 3 (commencing with Section 48400) of this part shall attend the public full-time day school or continuation school or classes for the full time designated as the length of the schoolday by the governing board of the school district in which the residency of either the parent or legal guardian is located and each parent, guardian, or other person having control or charge of such pupil shall send the pupil to the public full-time day school or continuation school or classes for the full time designated as the length of the schoolday by the governing board of the school district in which the residence of either the parent or legal guardian is located. Residency, for the purpose of attending public schools, shall be determined by Section 17.1 of the Welfare and Institutions Code.

"Unless otherwise provided for in this code, a pupil shall not be enrolled for less than the minimum schoolday established by law."

[12]Now article IX, section 5, of the California Constitution. (See fn. 10, *ante.*)

a public school is, therefore, one derived and secured to it under the highest sanction of positive law. *It is therefore, a right—a legal right—*as distinctively so as the vested right in property owned is a legal right, and as such it is protected, and entitled to be protected by all the guarantees by which other legal rights are protected and secured to the possessor." (48 Cal. at p. 50, italics added; quoted in *Piper* v. *Big Pine School Dist.* (1924) 193 Cal. 664, 670 [226 P. 926].)

In 1977, the Legislature enacted chapter 965 which repealed former section 48900 of the Education Code and added a new section 48900 and a new section 48000.2 to the code. (Stats. 1977, ch. 965, §§ 3, 4.) At the same time the Legislature repealed, amended and added other sections to the Education Code. Chapter 965 made fundamental changes in the disciplinary systems used in California schools. Prior to the enactment of chapter 965, teachers and principals could suspend and governing boards could expel pupils upon a showing of "good cause." (Former §§ 48901-48903.5, as amended by Stats. 1976, ch. 1010, § 2.) Chapter 965 narrowed the discretionary application of suspension and expulsion as disciplinary measures by substituting specific criteria against which such decisions by teachers (Ed. Code, § 48901), principals (Ed. Code, § 48903), and governing boards (Ed. Code, § 48904.5) must be measured. The new and exclusive grounds for suspension were set forth in Education Code section 48900;[13] section 48900.2[14] provided that the failure of other means of correction to bring about proper conduct was a precondition to suspension (although a principal could suspend a pupil on the grounds listed in § 48900 if the pupil's presence caused a danger to person or property or threatened to disrupt the instruction process).[15] (See *Review of Selection 1977 California Legislation* (1978) 9 Pacific L.J. 281, 505-506, 507 (hereafter cited as *1977 Legislation*].)

Chapter 965 also made two other fundamental changes in the disciplinary systems. It established review procedures for each level of the administra-

---

[13]Education Code section 48900 was repealed in 1983 and a new section 48900 was added which expanded and modified the grounds for suspension. (Stats. 1983, ch. 498, § 81, urgency eff. July 28, 1983.)

[14]Education Code section 48900.2 was repealed in 1983 (Stats. 1983, ch. 498, § 90) and its provisions were included in new Education Code section 48900.5 (Stats. 1983, ch. 498, § 91, urgency eff. July 28, 1983. Amended by Stats. 1983, ch. 1302, § 20, urgency eff. Sept. 30, 1983).

[15]Former Education Code section 48904.5 which provided, inter alia, that the failure of other means of correction to bring about proper conduct was a precondition to expulsion, was also added by chapter 965 (Stats. 1977, ch. 965, § 15). Section 48904.5 was repealed in 1983 (Stats. 1983, ch. 498, § 90, urgency, eff. July 28, 1983). Its provisions are now contained in Education Code section 48911 (suspension by principal or designee) which was added to the Education Code in 1983 (Stats. 1983, ch. 498, § 91, urgency, eff. July 28, 1983. Amended by Stats. 1983, ch. 1302, § 21, urgency, eff. Sept. 30, 1983.)

tive structure, i.e., school, local district and county board of education, and extended statutory rights to public school pupils. (See *1977 Legislation, supra,* at p. 507.)

These revisions to the Education Code were in response to a decision of the United States Supreme Court in *Goss* v. *Lopez* (1975) 419 U.S. 565, 574 [42 L.Ed.2d 725, 734, 95 S.Ct. 729] in which the court applied the requirements of procedural due process to suspensions of public school pupils. In *Goss,* the court found an Ohio statute, which permitted arbitrary suspension of students from the public schools, to be unconstitutional in light of an Ohio statutory provision that extended a right to a free education to all children between the ages of 6 and 21.[16] (At p. 567 [42 L.Ed.2d at pp. 730-731].) The court held that "[h]aving chosen to extend the right to an education to people of appellee's class generally, Ohio may not withdraw the right on grounds of misconduct, *absent fundamentally fair procedures* to determine whether the misconduct has occurred. . . ." (At p. 574 [42 L.Ed.2d at p. 734], italics added.)

Chapter 965 was an attempt by the Legislature to satisfy the procedural due process requirements of *Goss.* By arbitrarily suspending students for reasons not enumerated in section 48900 and by suspending and threatening to suspend students without first exhausting other means of correction, as required by section 48900.2, respondents frustrated "the achievement of fundamental legislative goals." (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 936.) The obvious goal of the Legislature in enacting chapter 965 was to safeguard the constitutional and statutory right of California children to a free education (Cal. Const., art. IX, § 5, Ed. Code, § 48200) by establishing fair procedures which must be followed before that right is withdrawn. Thus, a pupil's right to suffer suspension only for the reasons, and in the manner, specifically determined by the Legislature to be fair is of sufficient " 'strength' " and " 'societal importance' " to be encompassed within Code of Civil Procedure section 1021.5. (See *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 935.)

Certainly the same principle would apply to the parent's right, pursuant to Education Code section 90067, to be informed whenever it becomes evident that a pupil is in danger of failing a course. A failure, as well as a suspension, could deprive a child of his or her right to a free education.

Further, in *Burton* v. *Board of Education* (1977) 71 Cal.App.3d 52 [139 Cal.Rptr. 383], the Court of Appeal condemned corporal punishment with-

---

[16]California extends the right to a free education to children between the ages of 6 and 16. (Ed. Code, § 48200.)

out parental permission. As relevant here, the court stated with respect to Education Code sections 49000[17] and 49001:[18] "[T]he Legislature provided the school districts with the choice of (1) electing not to engage in corporal punishment, or (2) adopting rules authorizing corporal punishment provided they allow parents to grant or withhold consent thereto. Clearly, the Legislature intended that every parent or guardian in *every* public school should have the *right* to withhold consent to corporal punishment, including parents of those children attending fundamental schools." (*Id.*, at pp. 58-59, original italics and italics added.) In light of *Burton,*. respondents cannot be heard to complain that the parental right to withhold consent to corporal punishment is not of sufficient "'strength'" or "'societal importance'" (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 935) to be among the "important rights" encompassed within Code of Civil Procedure section 1021.5.

3. *A "significant benefit . . . conferred on the general public or a large class of persons."*

Respondents contend the denial of petitioners' attorney fees can be upheld on the ground that petitioners' litigation did not confer a "significant benefit . . . on the general public or a large class of persons" as required by section 1021.5.

■ We note first that the explicit terms of the statute provide the "significant benefit" conferred by the litigation may be either "pecuniary or nonpecuniary" in nature. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 939.) This language reflects a recognition that in many cases the important gains or contributions rendered by public interest litigation will be reflected in nonmonetary advances. (*Ibid.*) Secondly, the "'significant benefit'" that will justify an attorney fee award need not represent a "'tangible'" asset nor a "'concrete'" gain, but may be recognized, as in the instant case, simply from the effectuation of a fundamental constitutional or statutory policy. (*Ibid.*)

Respondents contend, however, that the benefit was not "significant" because it was not conferred on "the general public or a large class of persons." Respondents urge that only petitioners themselves, a total of 23 persons, were benefited by this litigation. Alternatively they contend that

---

[17]Education Code section 49000 provides: "The governing board of any school district may adopt rules and regulations authorizing teachers, principals, and other certificated personnel to administer reasonable corporal or other punishment to pupils when such action is deemed an appropriate corrective measure *except and to the extent that such action is permissible as provided in Section 49001.*" (Italics added.)

[18]See footnote 6, *ante.*

at most only the 900 Philadelphia School students and their parents received a benefit, if any, as a result of the peremptory writ issued by the trial court and that even that number of persons is not sufficiently large to meet the requirements of section 1021.5. Respondents' argument is fallacious. Even if the impact of this lawsuit were limited to the present Philadelphia School students and their parents, the litigation still benefited "a large class of persons." However, the impact of petitioners' action is far greater than respondents acknowledge. All future Philadelphia School students and their parents will benefit from respondents' mandatory compliance with the trial court's order. The issuance of the peremptory writ imposes an obligation on the school district which is not limited to the present time; rather, the obligation on respondents is a continuing one.

Moreover, the litigation has put the school district on notice that the affirmation of belief form is not appropriate for use at any of its fundamental schools and that its other fundamental schools must also abide by the requirements of the Education Code. Therefore, petitioners' action satisfies the requirement of section 1021.5 that it confer a "significant benefit . . . on the general public or a large class of persons."

### 4. The "necessity and financial burden of private enforcement."

■ The final factor required for petitioners to prevail on their request for attorney fees under section 1021.5 is that "the necessity and financial burden of private enforcement are such as to make the award appropriate."

As to the first part of the requirement, inasmuch as the action proceeded against the only government agency which bears responsibility for the challenged practices, "the necessity of private, as compared to public, enforcement [is] clear." (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d at p. 941.) It is also clear that the second part of the requirement is met. "Since [petitioners] had no *pecuniary* interest in the outcome of the litigation, 'the financial burden in this case [was] such that an attorney fee award [was] appropriate in order to assure the effectuation of an important public policy.' [Citation.]" (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321, and see fn. 11 at p. 321, italics added.)

In sum, this court is satisfied that petitioners' action meets the requirements of section 1021.5 of the Code of Civil Procedure. Since no reasonable basis for denying petitioners' motion appears in the record, the trial court's refusal to award fees was an abuse of discretion and its order of denial must be reversed.

■ When a party is entitled to attorney fees under section 1021.5, the amount of the award is determined, in the first instance, by the trial court

according to the guidelines set forth by the Supreme Court in *Serrano* v. *Priest, supra,* 20 Cal.3d at pages 48-49. (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d at p. 321.) *Serrano* v. *Priest* "requires the trial court to first determine a 'touchstone' or 'lodestar' figure based on a 'careful compilation of the time spent and reasonable hourly compensation for each attorney . . . involved in the presentation of the case. [Citations.] That figure may then be increased or reduced by the application of a 'multiplier' after the trial court has considered other factors concerning the lawsuit." (34 Cal.3d at p. 321.)

Therefore, we remand this case to the trial court for a determination of the compensation to which petitioners' attorneys are entitled for all hours reasonably spent in achieving their victory. Petitioners' attorneys are also entitled to fees for the time spent prosecuting the claim for their fees in the trial court and on appeal. (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621, 636-639 [186 Cal.Rptr. 754, 652 P.2d 985]; *Daniels* v. *McKinney, supra,* 146 Cal.App.3d at pp. 42, 57.)

## Disposition

Reversed and remanded to the trial court for further proceedings consistent with this opinion. Petitioners shall recover costs on appeal.

Klein, P. J., and Danielson, J., concurred.