Filed 9/18/13  Live Oak Holding v. Bd. of Supervisors Cty of San Diego CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| LIVE OAK HOLDING COMPANY, LLC et al., | D062327 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2011-00100974-CU-WM-EC) |
| BOARD OF SUPERVISORS OF THE COUNTY OF SAN DIEGO, | |
| Defendant and Appellant; | |
| COUNTY OF SAN DIEGO, DEPARTMENT OF PLANNING AND LAND USE, | |
| Real Party in Interest. | |


APPEAL from a judgment of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Affirmed.


Thomas E. Montgomery, County Counsel, Bryan M. Ziegler, Senior Deputy County Counsel, and Thomas D. Bunton, Deputy County Counsel, for Defendant and Appellant, and for Real Party in Interest.

The Watkins Firm, Daniel W. Watkins and Nancy A. Correa for Plaintiffs and Respondents.

Live Oak Holding, LLC (Live Oak) and Nazar Najor contested by petition for writ of mandate a stop work order and a civil penalty order issued by the Board of Supervisors of the County of San Diego (County). Live Oak and Najor ultimately prevailed in the writ proceedings by obtaining a writ of mandate that voided the stop work and civil penalty orders. They then moved for and obtained an award of attorney fees pursuant to Code of Civil Procedure[1] section 1021.5. County appeals, challenging the award of attorney fees, arguing there was no evidence to support the award.

I

FACTUAL AND PROCEDURAL BACKGROUND

A. The Underlying Conduct

Live Oak is a Class D public water utility regulated by California's Public Utilities Commission (PUC), and has been managed by Najor since 1984. Live Oak provides potable water to 92 residences and 5 businesses via metered connections, and occasionally provides water to customers whose wells may run dry. Live Oak also provides nonpotable water to others.

In 2011, Live Oak also sold water to contractors involved in the construction of a new Border Patrol Station and the Sunrise Powerlink project. Revenue from these sales

---

[1] Statutory references are to the Code of Civil Procedure unless otherwise specified.

2

would have alleviated the need to implement a customer rate increase for Live Oak's existing customers.

B. The Administrative Proceedings

In August 2011 County's department of land use planning (DPLU) issued a stop work order prohibiting Live Oak from extracting groundwater without a major use permit, alleging Live Oak was violating County's zoning ordinances. Najor attempted to explain to the DPLU that Live Oak was governed by the PUC and therefore County's zoning ordinances did not apply, and submitted documentation demonstrating Live Oak's status as a public water utility regulated by the PUC, in support of Live Oak's request to lift the stop notice. County instead maintained that Live Oaks continued extraction of water "for purposes of off-site sales" violated County's laws and would subject it and Najor to penalties.

In September 2011 the DPLU issued a civil penalty notice and order, requiring Live Oak and Najor to pay a $10,000 penalty unless they timely appealed. The DPLU also notified the contractors to whom Live Oak had sold the water that it could seek to levy penalties against them as well as against Live Oak and Najor.

Live Oak and Najor timely appealed the civil penalty notice and order, contending Live Oak was a California public utility and denying any violations of County ordinances occurred. Although they presented evidence Live Oak was a public utility regulated by the PUC, and that it was entitled to engage in the activities that were the basis for the stop notice and civil penalty notice, the civil penalty was upheld by the hearing officer.

3

C. <u>The Writ Proceedings</u>

Live Oak and Najor filed a petition for writ of mandate in the superior court challenging the decision of the hearing officer and alleging County did not have jurisdiction over Live Oak's conduct. Although County's counsel apparently recognized County had no jurisdiction over Live Oak's sale of water to third party contractors, County opposed the petition based, in part, on the claim that Najor lacked standing to seek the requested relief, and that the other named petitioner had forfeited its right to sue because it was not a corporation in good standing. The court held a hearing on the writ petition and, after considering the papers and arguments of counsel, ruled in favor of Live Oak and Najor.

Live Oak and Najor then moved for an award of attorney fees and costs under a variety of theories, including that they were entitled to fees under section 1021.5. Although County conceded they were entitled to costs, it asserted none of the statutory bases cited by them as the basis for an award of attorney fees were applicable in this action. The court ruled fees were appropriate under section 1021.5, and awarded attorney fees. County appealed solely from the order awarding attorney fees.

II

LEGAL STANDARDS

To obtain attorney fees under section 1021.5, the party seeking fees must show the litigation resulted in the enforcement of an important right affecting the public interest and (1) it conferred a significant pecuniary or nonpecuniary benefit on the general public or a large class of persons, (2) the financial burden on plaintiffs from enforcing the right

4

was out of proportion to their individual stake in the matter, and (3) fees should not in the interests of justice be paid out of the award. (§ 1021.5.) "Because the statute states the criteria in the conjunctive, each must be satisfied to justify a fee award." (*RiverWatch v. County of San Diego Dept. of Environmental Health* (2009) 175 Cal.App.4th 768, 775.)

When a trial court's order awarding or denying private attorney general fees is appealed, "the normal standard of review is abuse of discretion. However, de novo review of such a trial court order is warranted where the determination of whether the criteria for an award of attorney fees and costs in this context have been satisfied amounts to statutory construction and a question of law." (*Carver v. Chevron U.S.A., Inc.* (2002) 97 Cal.App.4th 132, 142.) Although the "decision whether to award attorney fees under section 1021.5 rests initially with the trial court" (*RiverWatch, supra,* 175 Cal.App.4th at p. 775), the court does not have the discretion to award such fees unless the statutory criteria have been met as a matter of law. Where the material facts are undisputed, and the question is how to apply statutory language to a given factual and procedural context, the reviewing court applies a de novo standard of review to the legal determinations made by the trial court. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175.)

III

ANALYSIS

County asserts that none of the criteria for an award of section 1021.5 attorney fees are supported by evidence in the record, and therefore the trial court's order was in error. We examine each of the elements.

5

A. The "Important Right Affecting the Public Interest" Element

County first argues the writ petition did not enforce an important right affecting the public interest, because it only established that Live Oak could sell water to third parties for use in construction projects outside its area of service.  However, the judgment in the writ proceeding did more than simply vacate the stop order and void the penalty assessment: it declared County was without jurisdiction over the "regulation of water transmission, sales, distribution, and the facilities constructed or installed by the public water utility, Live Oak Springs Water Company, such activities being the exclusive jurisdiction of the [PUC]."  "The determination that the public policy vindicated is one of constitutional stature will not, of course, be in itself sufficient . . . [but does establish] the first of the three elements requisite to the award (i.e., the relative societal importance of the public policy vindicated)."  (*Serrano v. Priest* (1977) 20 Cal.3d 25, 46, fn. 18.)  The exclusive jurisdiction of the PUC enforced here reflects a policy derived from both constitutional as well as statutory enactments (*San Diego Gas & Electric Co. v. City of Carlsbad* (1998) 64 Cal.App.4th 785, 792-794), and a judgment finding a local agency's actions have violated constitutional enactments and requiring that agency to adhere to those mandates can satisfy the "important right affecting the public interest" element under section 1021.5.  (*Slayton v. Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 547.)  We conclude the trial court's finding as to the first element was not an abuse of discretion.

B. The "Significant Benefit Conferred on a Large Class" Element

County asserts there was no evidence the result of the proceeding conferred any significant benefit on the public or a large class of persons because the only benefitted parties were Live Oak and Najor. In determining whether an action conferred a significant benefit on the general public or a large class of persons, the trial court may consider both those who presently benefit from the action's outcome and those who will benefit in the future. (*Slayton v. Pomona Unified School Dist., supra,* 161 Cal.App.3d at pp. 551-552.) Here, all of Live Oak's present metered customers benefit from the decision because the revenues Live Oak is now free to generate may ameliorate the necessity for future rate increases. Moreover, third parties who have purchased (or may in the future wish to purchase) water for offsite uses are unshackled from the specter of being pursued by County for civil penalties. Finally, other local water agencies within San Diego County similarly situated to Live Oak will presumably fall under the umbrella of protection created by this decision. We conclude the trial court did not abuse its discretion when it found the action conferred benefits on a large class apart from Live Oak and Najor.

C. The "Disproportionate Financial Burden" Element

County finally argues there was no evidence the award of attorney fees was appropriate, considering the necessity and financial burden of private enforcement. This element examines two issues: whether private enforcement was "necessary" and whether the financial burden of private enforcement was sufficiently disproportionate to the litigant's personal interest to warrant subsidizing the successful party's attorneys. (*In re*

7

*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214-1215 (*Whitley*).) County does not challenge the "necessity" prong, but instead asserts there was no evidence to show the second prong of the inquiry--the "financial burden of private enforcement"--was satisfied.

Even assuming County may raise this issue on appeal,[2] we conclude the trial court's determination on this issue was not an abuse of discretion. "In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits that the litigation yields or reasonably could have been expected to yield." (*Whitley, supra,* 50 Cal.4th at p. 1215.) An award is appropriate " 'when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 941.) "This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit." (*Press v. Lucky Stores, Inc.* (1983) 34 Cal.3d 311, 321, fn. omitted.)

Live Oak and Najor had some financial incentive to bring the writ petition-- resisting a $10,000 penalty--but not every pecuniary or nonpecuniary interest in the outcome automatically disqualifies a litigant from attorney fees under section 1021.5.

---

2    In the proceedings below, County only challenged entitlement to attorney fees on the grounds that the first two elements (the " 'important right affecting the public interest' " and the " 'significant benefit . . . conferred on the general public or a large class of persons' ") had not been shown. In analogous circumstances, the courts have concluded the issue was waived on appeal. (*County of Colusa v. California Wildlife Conservation Bd.* (2006) 145 Cal.App.4th 637, 657, fn. 12.) We nevertheless examine this issue.

(*Lyons v. Chinese Hospital Assn.* (2006) 136 Cal.App.4th 1331, 1352.)  Indeed, without some concrete personal interest in the litigation, the plaintiff would lack standing to bring the action.  (*Whitley, supra,* 50 Cal.4th at p. 1216.)  When the party claiming fees *does* have some pecuniary interest in the outcome of the lawsuit, the focus is on whether the financial burden placed on the party is out of proportion to its personal stake in the lawsuit.  (*Lyons, supra.*)

We conclude the trial court did not abuse its discretion in deciding that the financial burden of prosecuting the action, over $60,000 in attorney fees, was disproportionate to the $10,000 personal stake in avoiding the civil penalty.  County insists, however, that the court should have considered the ability to earn future profits if Live Oak and Najor were free from the stop notice.  However, this alleged stake is speculative, because the only concrete evidence of potential third-party buyers for Live Oak's water from whom it could have profited also showed the window for selling to that third party-buyer had already closed.

County has requested that we take judicial notice of a subsequent lawsuit, filed by Live Oak and Najor against County and others, seeking damages for the losses suffered from the lost opportunity to sell to the third party buyer.  County asserts this lawsuit shows Live Oak and Najor had a much larger personal stake in the outcome of the litigation than merely the $10,000 civil penalty, rendering the award of attorney fees improper.  However, with limited exceptions not present here, courts do not take judicial notice of matters not presented below (*Haworth v. Superior Court* (2010) 50 Cal.4th 372, 379, fn. 2) or occurring after the challenged judgment was entered (*People ex rel Dept. of*

9

*Public Works v. Keligian* (1960) 182 Cal.App.2d 771, 774-775), and we therefore deny

County's request for judicial notice. Moreover, even were we to judicially notice the

existence of a later-filed lawsuit, this would not aid County's argument because potential

recovery in a different lawsuit is at best speculative and should not impact our assessment

of the issues presented here. (Cf. *Best v. California Apprenticeship Council* (1987) 193

Cal.App.3d 1448, 1469, fn. 18 [rejecting consideration of later-filed lawsuit for monetary

damages as basis for denying attorney fees award because, "[e]ven assuming [claimant]

has a pending suit for damages, he is not assured a favorable outcome, nor do we know if

the interests of justice would warrant payment of fees out of a collateral award for

damages [and] [w]e decide the [attorney fees issue] on the record before us"].)

      D. <u>The Amount of the Award</u>

      County argues the trial court abused its discretion in the amount of the attorney

fees award because there was insufficient documentation submitted in support of the

amounts claimed. We are not persuaded by this argument because County did not raise

this objection in the trial court. " 'An appellate court will not consider procedural defects

or erroneous rulings where an objection could have been, but was not, raised in the court

below.' " (*Children's Hospital & Medical Center v. Bontá* (2002) 97 Cal.App.4th 740,

776.) When a party has had ample opportunity to object to the sufficiency of the

declarations in support of a request for attorney fees and does not do so, we deem the

challenge waived. (*In re Marriage of Feldman* (2007) 153 Cal.App.4th 1470, 1496

[failure of party to object to amount of fees sought or to documentation submitted in

support of fee request waives appellant's challenge to amount of award]; *Robinson v.*

10

*Grossman* (1997) 57 Cal.App.4th 634, 648 [party who failed to object to the trial court that the opposing party's attorney fees were not sufficiently documented waived the right to object on appeal to the amount of the fee award].)

DISPOSITION

The judgment is affirmed. Live Oak and Najor are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


NARES, Acting P. J.


IRION, J.