**Barbara Jean SAMUEL, Plaintiff and Appellant,**

v.

**Kent BENEDICT et al., Defendants and Appellees.**

**No. 76–2066.**

United States Court of Appeals, Ninth Circuit.

Feb. 10, 1978.

As Amended March 15, 1978.

John C. Willbrand, San Francisco, Cal., for plaintiff and appellant.

R. Kent Brewer, Walnut Creek, Cal., for defendants and appellees.

Before WRIGHT, CHOY and TANG, Circuit Judges.

**581**

CHOY, Circuit Judge:

Samuel appeals the district court's denial of attorney's fees in her action for damages based on defendant's violations of the Civil Rights Act of 1886, 42 U.S.C. § 1982 and the Fair Housing Act of 1968, 42 U.S.C. §§ 3601–3631. We affirm.

Samuel alleged in the district court that defendant had refused to rent to her because she was black. The jury returned a verdict for her awarding compensatory damages of $2,000 and punitive damages of $500. Following trial, Samuel made a motion to amend the judgment to include the name of one defendant and for an award of attorney's fees pursuant to 42 U.S.C. § 3612(c). Section 3612(c) allows recovery of reasonable attorney's fees for a prevailing plaintiff

> provided, [t]hat the said plaintiff in the opinion of the court is not financially able to assume said attorney's fees.

The district court denied the fees because a contingent fee agreement reached between Samuel and her attorney prior to the litigation made her "financially able to assume said attorney's fees." We hold that this ruling is consistent with the cases which have construed § 3612(c) and is mandated by its legislative history.

The concern of Congress in enacting § 3612(c) was that a litigant not be discouraged from bringing a civil rights suit because of the financial burden of the resulting legal fees. Congress reasoned that the allowance of attorney's fees to a successful civil rights plaintiff who is unable to assume them encourages individuals injured by racial discrimination to seek judicial relief. *Newman v. Piggie Park Enterprises, Inc.,* 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968). In implementing § 3612(c), the court's concern should be whether the plaintiff's income can "support the additional burden of legal expenses to prosecute [the] action." *Sanborn v. Wagner,* 354 F.Supp. 291, 298 (D.Md.1973).

The mere inability to bear his own expenses, however, does not entitle every plaintiff to the benefits of § 3612(c). As

Senator Brooke indicated in hearings on this section: "Of course, when the plaintiff goes to the attorney he [the attorney] must say, '*If we are successful*, the court may award fees.'" 114 Cong.Rec. 5514 (1968) (emphasis added).

While Congress has manifested its desire that financial burdens not severely limit the prosecution of civil rights claims, it has also made clear that, in order to qualify for reimbursement, a plaintiff must have prosecuted his claim successfully. Section 3612(c) provides no benefits for unsuccessful plaintiffs.[1]

The poor[2] plaintiff then is faced with a dilemma. If he prosecutes his civil rights action, he runs the risk of an adverse judgment. In that case, he would be forced to sink further into poverty. That these individuals finance their own actions through contingent fee agreements seems a safe and logical alternative. This is probably the reason that appellant here chose that course. Had she been unsuccessful below, and therefore unable to fall within § 3612(c), no financial outlay would have been required of her. She would have suffered no monetary loss whatsoever. No funds would have been diverted from her income to pay for the litigation because her attorney would have suffered the loss. There would in short be no financial barrier to the litigation—the very purpose Congress sought to achieve.

Had she not entered into the contingent fee arrangement, however, all the risk would have been placed on her shoulders. She would have had to bear the burden during the litigation. If the judgment proved to be adverse, the burden would have permanently rested with her. Without the contingent fee arrangement, the financial burden combined with the fear of an adverse judgment might have forced her to do exactly what Congress was legislating against in § 3612(c)—abandon her suit because of the lack of financial resources. In other words, without a contingent fee arrangement, her financial security would have been questionable throughout the course of the litigation.

If faced with a similar situation, we might choose as appellant did here and enter into a contingent fee arrangement. We certainly would not be discouraged by knowing that a percentage of our award was designated for our attorney. We would be much more discouraged about bringing an action if we knew that a jury might not believe us, leaving us an attorney's fee that we would be unable to pay.

The contingent fee arrangement, therefore, seems an excellent device "to encourage individuals injured by racial discrimination to seek judicial relief." *Newman*, 390 U.S. at 402, 88 S.Ct. at 966.

We are aware of *Hairston v. R & R Apartments*, 510 F.2d 1090 (7th Cir. 1975), where the plaintiffs were provided free legal services from a private legal service organization. The court held that "[a]warding attorney fees when the plaintiff is unable to bear the expense of litigation even though the legal services are provided at no cost is consistent with and advances this policy." 510 F.2d at 1092. The court approved the lower court's finding that "the purpose behind the award of attorney fees was to avoid denying plaintiffs

---

1. If Samuel's argument prevailed, the financial risk of defeat which Congress intended to remain a part of these civil rights actions would be eliminated. Every plaintiff would enter into a contingency fee arrangement with the expectation of also seeking attorney's fees. It would be a no-risk situation for the plaintiff and any return would be inflated by the amount of attorney's fees awarded by the court. Any loss, however, would accrue to the attorney. While all lawyers would not be willing to work under such conditions, we are convinced that there are a sufficient number of members of the bar

who would be willing to undertake such suits—thereby eliminating the risk Congress sought to retain in the statute.

2. We are using the term "poor" as a matter of convenience. We do not reach the question of whether the plaintiff has to be indigent in order to qualify for § 3612(c). For a discussion of this issue, see *Smith v. Anchor Building Corp.*, 536 F.2d 231, 236 n. 9 (8th Cir. 1976); *Sanborn v. Wagner*, 354 F.Supp. 291, 297–98 (D.Md. 1973); 114 Cong.Rec. 5514 (1968) (remarks of Senator Mondale).

access to the courts because of burdensome expenses." *Id.* The court, concerned about the plaintiff's "burden to assume" the litigation and the financial "obstacle to access" to the courts, reasoned that "the burden of the costs is placed on the organization providing the services, and it correspondingly may decline to bring such suits and decide to concentrate its limited resources elsewhere, . . . indirectly crippl[ing] the enforcement scheme designed by Congress." *Id.*

No such crippling effect occurs here when a private attorney and his client enter into a contingency fee arrangement. No funds are diverted from "the enforcement scheme of Congress." In fact, further funds are added to the scheme by the investment of the private attorney. It is his investment which will be lost if the suit is unsuccessful. Neither the plaintiff nor any organization established to further Congress' scheme will suffer any out-of-pocket loss.

Our holding does not penalize those who use a contingent fee to finance their litigation any more than a denial of double recovery penalizes those whose insurance policies guard their lives and property against injury. The contingent fee here is the appellant's insurance policy. She chose a course of action which made access to the courts easy and risk-free. The purpose of § 3612(c) of the Fair Housing Act of 1968 has been satisfied.

Appellant claims that an alternate basis for an award of attorney's fees can be implied from 42 U.S.C. § 1982. The record, however, reveals that this contention was not raised below. Since the only issue she raised before the district court was financial inability to pay under § 3612(c), we are foreclosed from deciding the § 1982 claim on appeal. *See Rothman v. Hospital Service of Southern California*, 510 F.2d 956, 960 (9th Cir. 1975).

The judgment of the district court is AFFIRMED.