[Civ. No. 31159. Fourth Dist., Div. One. Feb. 28, 1985.]

BEACH COLONY II, Plaintiff and Appellant, v.
CALIFORNIA COASTAL COMMISSION, Defendant and Appellant.

108

**COUNSEL**

Latham & Watkins, David L. Mulliken and Christopher W. Garrett for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, N. Gregory Taylor, Assistant Attorney General, and Anthony M. Summers, Deputy Attorney General, for Defendant and Appellant.

## OPINION

**WORK, J.**—The Coastal Commission of the State of California (Commission) appeals an order awarding Beach Colony II (Colony II) attorneys fees of $50,550 pursuant to Code of Civil Procedure[1] section 1021.5, for expenses incurred in litigating certain administrative mandamus proceedings (§ 1094.5). Colony II cross-appeals the denial of attorneys fees incurred during the preceding administrative Coastal Commission proceedings. Alternatively, Colony II claims it is entitled to attorneys fees incurred for both the administrative and judicial proceedings pursuant to the Federal Civil Rights Attorneys' Fees Awards Act, 42 United States Code section 1988. We reverse so much of the judgment as awards fees for the mandamus proceedings.

### FACTUAL AND PROCEDURAL BACKGROUND

Colony II, a partnership formed to hold and develop real property, applied to the Commission for a development permit to build 10 condominium units (with mother-in-law attached units) on its land adjacent to the San Dieguito Lagoon. One special condition imposed by the Commission required Colony II to transfer a portion of its property to the public in exchange for the right to restore its parcel to its original contours after an "avulsive" act had swept away a portion of the land, allowing the encroaching lagoon waters to cover the theretofore dry land.

In *Beach Colony II* v. *California Coastal Com.* (1984) 151 Cal.App.3d 1107 [199 Cal.Rptr. 195], we held California recognizes the common law right of property owners to reclaim lands eroded through avulsion; that this right was not preempted by the California Coastal Act of 1976;[2] and that normally dry property, which becomes inundated by waters because unanticipated violent floods wash away above-water-level surface ground, does not automatically transform the newly submerged ground into a protected "wetland" for the purpose of the act. We also held the Commission may not require permit applicants to submit to unreasonable conditions.

---

[1]All statutory references are to the Code of Civil Procedure unless otherwise specified.
[2]Public Resources Code section 30000 et seq.

Colony II was awarded attorneys fees pursuant to section 1021.5 for expenses incurred in the litigation (453 attorney hours at $110 per hour, and paralegal 24 hours at $30 per hour, for a total of $50,550). However, the court refused to award attorneys fees incurred during the lengthy administrative proceedings. There was no award of attorneys fees pursuant to section 1028.5, because the court found the Commission's actions were not taken without substantial justification. Colony II's alternative theory, that it should be deemed the successful party to a federal civil rights action (42 U.S.C. § 1982) and entitled to fees pursuant to 42 United States Code section 1988, was not presented to the court below.

### STANDARD OF REVIEW

■  The trial court may award a successful litigant attorneys fees under section 1021.5 in specific circumstances. (*Woodland Hills Residents Assn., Inc.* v. *City Council* (1979) 23 Cal.3d 917, 938 [154 Cal.Rptr. 503, 593 P.2d 200]; *State of California* v. *County of Santa Clara* (1983) 142 Cal.App.3d 608, 616 [191 Cal.Rptr. 204].) It abuses its discretion " 'where no reasonable basis for the action is shown. [Citation.]' " (*Westside Community for Independent Living, Inc.* v. *Obledo* (1983) 33 Cal.3d 348, 355 [188 Cal.Rptr. 873, 657 P.2d 365]; *Baggett* v. *Gates* (1982) 32 Cal.3d 128, 142-143 [182 Cal.Rptr. 232, 649 P.2d 874]; *Slayton* v. *Pomona Unified School Dist.* (1984) 161 Cal.App.3d 538, 545 [207 Cal.Rptr. 705].) Where, as here, the court was not asked to, and did not make findings on substantial factual issues, we must infer all findings necessary to support the judgment and proceed to examine the record to determine if they are based on substantial evidence.

### I

### SECTION 1021.5 REQUIREMENTS

■  Section 1021.5 is explicit statutory authority for court-awarded attorneys fees under a private attorney general theory. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 925.) Section 1021.5 provides: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice

be paid out of the recovery, if any. . . ."[3] The rationale of the private attorney general theory is to encourage the presentation of meritorious claims affecting large numbers of people by providing successful litigants attorneys fees incurred in public interest lawsuits. (*Serrano* v. *Priest* (1977) 20 Cal.3d 25, 44-48 [141 Cal.Rptr. 315, 569 P.2d 1303] (*Serrano III*).)

*A. Colony II's Litigation Did Enforce an Important Right Affecting the Public Interest*

■ The private attorney general doctrine applies to both constitutional and statutory rights. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra*, 23 Cal.3d 917, 935.) Because no concrete standard exists to test whether an important right has been enforced, it is for the courts to assess the significance of the right. (*Slayton* v. *Pomona Unified School Dist., supra*, 161 Cal.App.3d 538, 547; *Woodland Hills, supra*, at p. 936.)

■ The Commission argues this litigation vindicated only the narrow rights of the owners of a single parcel of property to prevent an unconstitutional taking of property without due process. It cites the holding of *Pacific Legal Foundation* v. *California Coastal Com.* (1982) 33 Cal.3d 158 [188 Cal.Rptr. 104, 655 P.2d 306], to support its claim this right is not a matter sufficiently important to the public interest to justify shifting the burden of fees to the general public. *Pacific Legal Foundation, supra,* dealt with a specific challenge to a dedication condition imposed as a prerequisite to granting a permit to improve an existing seawall. (*Id.,* at p. 165, fn. 3.) The California Supreme Court refused to award attorneys fees. However, that litigation resulted in only a superior court decision on the merits, limited to the parties, without precedential value. Thus, no significant benefit inured to any large group of persons. (*Id.,* at p. 167.) It appears the refusal to award fees rested, in large part, on the fact the appeal of the underlying case was dismissed so the trial court decision affects only rights of a single set of owners to a specific parcel of property.[4]

The ramifications of the decision in Colony's litigation differ significantly from those in *Pacific Legal Foundation.* In a published decision, we recognized the legislative need to protect the natural resources in the coastal

---

[3]Subdivision (c) does not apply because there was no monetary recovery.

[4]The Commission argues the significance of the *Pacific Legal Foundation* holding is the fact the Supreme Court refused to award fees where the litigation only enforced plaintiff's right to be free from an unconstitutional taking of private property, a constitutional right involved here. However, the Supreme Court has stated it was the nature of the vindicated right in *Pacific combined* with the limited scope of the trial court decision which mandated denying fees. (*Press* v. *Lucky Stores* (1983) 34 Cal.3d 311, 319-320, fn. 7 [193 Cal.Rptr. 900, 667 P.2d 704].)

zone by balancing coastal developmental concerns with maximizing public access consistent with sound resources conservation, while at the same time constitutionally protecting the rights of affected private property owners. (Pub. Resources Code, §§ 30001-30004.) The relationship of the coastal act and common law was defined in the area of avulsion, in an opinion of first impression with statewide precedential application.

Indeed, the Commission admits the importance of the litigation. It states in its petition for hearing in the Supreme Court, the decision "may well preclude future litigation over questions of how the right to deal with avulsion is to be coordinated with modern land-use regulations."

### B. A Significant Benefit Was Conferred on a Large Class of Persons

■ The language of section 1021.5 reflects a recognition that the important gains or contributions rendered by public interest litigation may be shown through nonmonetary advances. (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 939.) A tangible asset or a concrete gain does not have to be present to satisfy this requirement, rather the effectuation of a fundamental constitutional or statutory policy may be present. (*Slayton* v. *Pomona Unified School Dist., supra,* 161 Cal.App.3d 538, 551.)

■ The record shows the court could reasonably conclude the litigation conferred significant benefits on a substantial number of persons, other than Colony II (i.e., all persons who now and in the future may own land subject to avulsion, and, in particular, those persons who hold such lands lying within environmentally sensitive areas subject to the coastal act and similar present and future governmental control). In addition, the likelihood the litigation will improve the Commission's sensitivity to due process rights of those landowners affected by its actions is a relevant factor. (See *Rich* v. *City of Benicia* (1979) 98 Cal.App.3d 428, 436 [159 Cal.Rptr. 473].) The impact of Colony II's legal victory is a continuing one and establishes the rights of all land owners similarly situated. There is no requirement the class of persons benefited encompass the entire general public. (*Slayton* v. *Pomona Unified School Dist., supra,* 161 Cal.App.3d 538, 551, 552.)

### C. Necessity and Financial Burden of Private Enforcement

Colony II correctly argues that no public agency was willing or able to contest the Commission's decision, therefore it has met the necessity requirement of section 1021.5. (See *American Federation of Labor* v. *Employment Dev. Dept.* (1979) 88 Cal.App.3d 811, 822 [152 Cal.Rptr. 193].)

■ However, the record[5] contains no evidence Colony II's financial burden of attorneys fees is out of proportion to its *personal stake* in litigating the case.

■ Only if there has been an abuse of discretion amounting to a manifest miscarriage of justice or when the trial court has awarded fees where there is no reasonable basis to do so, is reversal warranted. (*State of California* v. *County of Santa Clara, supra,* 142 Cal.App.3d 608, 616; see *Marini* v. *Municipal Court* (1979) 99 Cal.App.3d 829, 836-837 [160 Cal.Rptr. 465].)
■ Colony II bears the burden of establishing that its litigation costs transcend its personal interest. (*County of Inyo* v. *City of Los Angeles* (1978) 78 Cal.App.3d 82, 90 [144 Cal.Rptr. 71].) Colony II alleges it has borne a financial burden disproportionate to the value of its private benefits gained by the litigation, in light of the substantial public benefit conferred at no cost to the general public.

Colony II makes no attempt to compare its litigation costs to the immediate economic benefit it personally received from judicially establishing its right to restore its property, or to the commercial economic gain it anticipates from the renewed ability to build its housing development. Its sole contention is that the general public got something for nothing at Colony II's expense. This is not the balancing test required to justify a shift of fees. What is required is a showing " 'the cost of the claimant's legal victory transcends his *personal interest,* that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff "out of proportion to his individual stake in the matter." [Citation.]' " (*Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 941, italics added, quoting *County of Inyo* v. *City of Los Angeles, supra,* 78 Cal.App.3d 82, 89.)

In any event, Colony II's allegation ignores the fact that the benefits it obtained are immediately and directly translated into monetary terms. The public benefits are not likely to result in any economic benefit to more than a few persons, even in the future. While every citizen theoretically benefits by rulings which compel a governmental body to follow the law and which resolve disputes over applicable law, that benefit is not pecuniary in nature. As a member of the general public, Colony II shares equally in those non-pecuniary benefits flowing from the litigation. However, only Colony II reaps the substantial, present economic benefit it would have lost had the litigation been unsuccessful.

---

[5]We have read the entire administrative record and the lower court files, as well as the record on this appeal.

The private attorney general theory recognizes citizens frequently have common interests of significant societal importance, but which do not involve any individual's financial interests to the extent necessary to encourage private litigation to enforce the right. (See *Save El Toro Assn.* v. *Days* (1979) 98 Cal.App.3d 544, 552 [159 Cal.Rptr. 577].) To encourage such suits, attorneys fees are awarded when a significant public benefit is conferred through litigation pursued by one whose personal stake is insufficient to otherwise encourage the action. (See *Woodland Hills Residents Assn., Inc.* v. *City Council, supra,* 23 Cal.3d 917, 933.) Section 1021.5 was not designed as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest. (See *County of Inyo* v. *City of Los Angeles, supra,* 78 Cal.App.3d 82, 90; see generally, Comment, *The Private Attorney General in California—An Evolution of the Species* (1981) 18 San Diego L.Rev. 843, 846.)

This last requirement effectuates public policy by focusing "on the financial burdens and incentives involved in bringing the lawsuit. [Fn. omitted.]" (*Press* v. *Lucky Stores, Inc., supra,* 34 Cal.3d 311, 321 [193 Cal.Rptr. 900, 667 P.2d 704].) (See *Schwartz* v. *City of Rosemead* (1984) 155 Cal.App.3d 547, 559 [202 Cal.Rptr. 400].) The record does not show Colony II's motive was anything but its economic self-interest.

Colony II admitted before the Commission that if the contested special permit conditions were imposed, its offsite improvement costs would rise from $500,000 to approximately $800,000. According to Colony II, such costs put the "project out of the realm of economic reality" because "the project could not support those kinds of costs." Two out of the ten condominiums would be eliminated, thereby reducing the market value of the project. The remaining eight condominiums would be unsaleable. Colony II's cost concerns were repeatedly asserted throughout the record. The trial court had reviewed the administrative record during the earlier proceedings and was aware of these admissions.

The only relevant evidence available to the trial court shows Colony II's financial stake in the outcome of its litigation was substantial. Its victory apparently makes it commercially feasible to build the 10 units and save $300,000 in offsite improvement expenses, or to sell the restorable property to another developer. Development is Colony II's business and its decision to sell or develop will be based upon economic considerations. The public benefit from the lawsuit was wholly coincidental to Colony II's personal profit-making goals. (Cf., *Schmid* v. *Lovette* (1984) 154 Cal.App.3d 466, 479 [201 Cal.Rptr. 424].)

Unlike its counterparts in *Press* v. *Lucky Stores, Inc.*, *supra*, 34 Cal.3d 311, Colony II has made no showing its financial burden transcends its personal financial interest in the outcome. This case is factually akin to circumstances considered in *Schwartz* v. *City of Rosemead, supra*, 155 Cal.App.3d 547, 559-560. There, the successful private plaintiff prevented construction of a cogeneration plant adjacent to his property until the builder and city complied with notice and environmental requirements. In denying the petition for an award of $22,000 in attorneys fees pursuant to section 1021.5, the court found the amount was not out of proportion to Schwartz' individual stake in preventing a $100,000 diminution of his land's value, and did not transcend his personal interests. We recognize that on review *Schwartz* was decided on the grounds the trial court's denial was not an abuse of discretion. However, Colony II has not produced any evidence to support an inferred finding that its legal costs transcend its personal interest in restoring its land contours and developmental feasibility.

Section 1021.5's policy of encouraging public interest lawsuits is not promoted by awarding fees to persons having strong personal economic interests in litigating matters. (Cf. *Olney* v. *Municipal Court* (1982) 133 Cal.App.3d 455, 463 [184 Cal.Rptr. 78].) The litigation here was self-serving, and Colony II does not show why its victory does not justify the cost of winning it. In the absence of any proof to the contrary, we reverse the award of attorneys fees pursuant to section 1021.5.[6]

## II

COLONY II WAS NOT ENTITLED TO AN AWARD OF ATTORNEYS FEES FOR EXPENSES INCURRED DURING THE ADMINISTRATIVE PROCEEDINGS

Colony II applied for a coastal development permit pursuant to Public Resources Code section 30600 et seq. and appeared in two lengthy administrative hearings before the Commission. The trial court denied its request for attorneys fees incurred at the administrative level, without stating its reasons.

Section 1021.5 states an award of attorneys fees is appropriate if specific criteria is met and one party is successful "in any *action* . . . ." Colony II reads section 1021.5 as including administrative proceedings. "An 'action' however, is merely a form of *judicial* remedy sought to protect a right or redress a wrong. [Citations.]" (*Serrano* v. *Unruh* (1982) 32 Cal.3d 621,

---

[6]In light of reversing the award of attorneys fees, we need not address the Commission's argument that the court was required to make specific findings.

636 [186 Cal.Rptr. 754, 652 P.2d 985] (*Serrano IV*), italics added.) The Supreme Court in *Serrano IV* defines judicial remedy as one " 'administered by the courts of justice, or by judicial officers empowered for that purpose . . . .' " (*Id.*, at p. 636, fn. 23.) Thus, the holding of *Serrano IV* is that an administrative agency may not award a successful petitioner attorneys fees under a private attorney general theory for prevailing in *nonjudicial* (i.e., legislative) proceedings.

In contrast with section 1021.5, section 1028.5's relevant language allows: "expenses incurred in *administrative* proceedings . . . ." (Italics added.) The absence of any reference to administrative proceedings in section 1021.5 suggests, at least, the section was not meant to apply to nonjudicial aspects of an administrative proceeding.[7] To support its argument, Colony II relies primarily on *New York Gaslight Club, Inc.* v. *Carey* (1980) 447 U.S. 54 [64 L.Ed.2d 723, 100 S.Ct. 2024]. That case is distinguishable because it relies on the language of section 706(k) of the Civil Rights Act of 1964, 78 Statutes 259, 42 United States Code section 2000e-5(k) which more expansively permits fees "[i]n any *action or proceeding* . . . ." (42 U.S.C. § 2000e-5(k), italics added.)

Assuming, without conceding, that section 1021.5 permits a court to award attorneys fees for expenses incurred during the quasi-judicial portion of administrative proceedings from which judicial review is taken through writ procedures, Colony II is nevertheless precluded from an award of attorneys fees under the private attorney general theory because it does not show its burden was out of proportion to its individual stake. (See, discussion in I, *ante.*)

### III

#### FEDERAL CIVIL RIGHTS ATTORNEYS FEES AWARDS ACT

Although not argued below, Colony II now asserts the Federal Civil Rights Attorneys' Fees Awards Act, 42 United States Code section 1988,[8] alternatively supports an award of attorneys fees incurred during both the administrative proceedings and litigation.

---

[7] We do not address whether, in fact, all or any part of the Commission proceedings preceding the petition for writ of mandate were quasi-judicial in character.

[8] The Civil Rights Attorneys' Fee Awards Act, codified as a part of section 1988, provides in pertinent part: "In any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318, or Title VI of the Civil Rights Act of 1964, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In enacting section 1988, Congress intended to remedy a gap created by the United States Supreme Court's decision in *Alyeska Pipeline Co.* v. *Wilderness Society* (1975) 421 U.S. 240 [44 L.Ed.2d 141, 95 S.Ct. 1612], which refused to permit plaintiffs to recover attorneys fees for public interest litigation on a private attorney general theory in the *absence* of statutory authorization. (Sen. Rep. No. 94-1011, 94th Congress, 2d Sess. pp. 4-5, reprinted in 1976 U.S. Code Cong. & Admin. News 5908, 5911-5912; *Serrano IV, supra,* 32 Cal.3d 621, 632, fn. 13.) Congress intended attorneys fees be awarded to a prevailing plaintiff in a civil rights action absent special circumstances which would render such an award unjust. (*Kreutzer* v. *County of San Diego* (1984) 153 Cal.App.3d 62, 76 [200 Cal.Rptr. 322].)

Simultaneously awarding attorney fees pursuant to both section 1021.5 and 42 United States Code section 1988 was approved in *Filipino Accountants' Assn.* v. *State Bd. of Accountancy* (1984) 155 Cal.App.3d 1023 [204 Cal.Rptr. 913]. However, Colony II did not ask the lower court to decide the propriety of an award of fees under the federal law, and thus, no findings may be inferred on this issue. This court is not a trier-of-fact, and the present record leaves us with no actual or implied findings to review. In *Kreutzer, supra,* we recited a lengthy, but partial, list of special circumstances which would render an award of attorney fees under 42 United States Code section 1988 unjust. Some of those factors are similar to those addressed under section 1021.5, others are not. We cannot presume what the trial court's findings would be on those which are different, nor can we presume the trial court would even award fees under the federal statute at all, especially in light of its express finding the Commission's actions were in good faith, a special circumstance some federal decisions have deemed relevant to denying recovery. (See *Aho* v. *Clark* (9th Cir. 1979) 608 F.2d 365, 368.) ■ We reject Colony II's claim for attorneys fees under 42 United States Code section 1988 because it was not raised nor ruled on below and is not properly presented on this appeal.

Judgment reversed.

Staniforth, Acting P. J., and Lewis, J., concurred.

A petition for a rehearing was denied March 19, 1985, and the petition of plaintiff and appellant for a hearing by the Supreme Court was denied May 1, 1985.