Ralph W. KEITH, et al., Plaintiffs,

v.

John A. VOLPE, as Secretary of Transportation, et al., Defendants.

Earl WRIGHT, et al., Additional Plaintiffs on Supplemental Complaint,

v.

CITY OF HAWTHORNE, a municipal corporation, et al., Defendants on Supplemental Complaint.

California Department of Housing and Community Development, et al., Intervenors on Supplemental Complaint.

Goldrich & Kest, Inc., a California corporation, Intervenors on Supplemental Complaint.

No. CV 72–355–HP.

United States District Court, C.D. California.

Aug. 26, 1986.

1318

Center for Law in the Public Interest, Bill Lann Lee, Elsa Leyva, Los Angeles, Cal., for plaintiffs.

Department of Transp., Bruce Behrens, Joel G. Philipp, Sacramento, Cal., for the State of Cal.

Burke, Williams & Sorensen, Richard R. Terzian, Cristina L. Sierra, Los Angeles, Cal., for the City of Hawthorne.

Office of the Attorney General State of Cal., Los Angeles, Cal., for the Dept. of Housing and Community Development.

Richard H. Levin, A Law Corp., Stephen A. Seideman, Los Angeles, Cal., for Goldrich & Kest, Inc., a California Corp.

## ORDER RE: AWARD OF ATTORNEYS' FEES AND OUT–OF–POCKET EXPENSES AGAINST DEFENDANT CITY OF HAWTHORNE

PREGERSON, Circuit Judge, sitting by designation.

In September 1985, this court held that the City of Hawthorne's decision to condition its approval of rezoning certain land for rental housing violated both section 804 of the Fair Housing Act, Title VIII of the Civil Rights Act of 1968, 42 U.S.C. § 3604(a), and Cal.Gov't Code § 65008(b)-(d). *See Keith v. Volpe*, 618 F.Supp. 1132, 1160 (C.D.Cal.1985). The plaintiffs now seek to recover reasonable attorneys' fees and out-of-pocket expenses incurred in connection with this decision. Pursuant to 42 U.S.C. § 3612(c), and Cal.Code Civ.Proc. § 1021.5, the court awards the plaintiffs $175,316.50 in attorneys' fees and $6,641.29 for out-of-pocket expenses.

### A.

Section 812(c) of the Fair Housing Act, 42 U.S.C. § 3612(c), permits a court to award "court costs and reasonable attorney fees in the case of a prevailing plaintiff" under the Act. Before making an award, the court must find that "the said plaintiff ... is not financially able to assume said attorney's fees." *Id.* The existence of a private contingent fee agreement between a plaintiff and counsel will bar a fees' award under this section. *See Samuel v. Benedict*, 573 F.2d 580, 581 (9th Cir.1978). However, absent such an agreement or where the plaintiffs receive free legal services, as here, there is no bar to a fees' award providing that the statute's financial ability proviso is satisfied. *See Hairston v. R & R Apartments*, 510 F.2d 1090, 1092–93 (7th Cir.1975) (award of fees under 42 U.S.C. § 3612(c) proper even though legal services provided free by private legal services organization); *see also Blum v. Stenson*, 465 U.S. 886, 893, 104 S.Ct. 1541, 1546, 79 L.Ed.2d 891 (1984) (statutory fees' award for work performed by nonprofit public interest firm to be assessed as if counsel came from private firm). Here, the plaintiffs obtained only injunctive relief. Where there is no recovery of damages in a Title VIII case, an award of fees under section 3612(c) is particularly appropriate. *See Fort v. White*, 530 F.2d 1113, 1119 (2d Cir.1976).

A finding of inability to pay is a prerequisite to a fees' award under section 3612(c). *See Fountila v. Carter*, 571 F.2d 487, 495 (9th Cir.1978); 42 U.S.C. § 3612(c). The Ninth Circuit has not indicated the threshold for determining when a person is "not financially able to assume ... attorney's fees." *See Samuel*, 573 F.2d at 582 n. 2 ("We do not reach the question of whether the plaintiff has to be indigent in order to qualify for § 3612(c)."). However, other circuits have expressly rejected any implication that only indigent plaintiffs are entitled to fees under section 3612(c). *See Smith v. Anchor Building Corp.*, 536 F.2d 231, 236 n. 9 (8th Cir.1976) ("We do not regard the proviso contained in § 3612(c) as

limiting attorney fees to only those persons of indigent status."); *Hairston,* 510 F.2d at 1091–92 (salary of $436 per month in 1974 is no bar to fees' recovery); *Marr v. Rife,* 503 F.2d 735, 743 (6th Cir.1974) (family income of $12,847 in 1970 did not bar recovery under § 3612(c)); *Steele v. Title Realty Co.,* 478 F.2d 380, 385 (10th Cir.1973) ("The test is not limited to present ability of the plaintiff to pay but whether he is financially able to assume [the cost of the fees].").

 The purpose of the attorneys' fees provision of section 3612(c) is to ensure that private parties are able to secure effective legal counsel to protect their fair housing rights guaranteed by federal law. *See Samuel,* 573 F.2d at 581; *cf. Pennsylvania v. Delaware Valley Citizens' Council for Clear Air,* —— U.S. ——, 106 S.Ct. 3088, 3095, 92 L.Ed.2d 439 (1986) (purpose of 42 U.S.C. § 1988 is to permit vindication of federal civil rights). People who have limited financial resources, but who are nonetheless not "indigent," would find it virtually impossible to secure competent counsel because attorneys would know that they would have little or no chance of adequate payment if they took on such people's fair housing cases. Thus, a rigid rule which excluded such people from fees' reimbursement would subvert the purpose of section 3612(c)'s fee-shifting provision and, indeed, would threaten to undermine the effectiveness of Title VIII as a whole.

 The court will follow the rule applied, apparently without exception, in other circuits. Thus, the court holds that, having prevailed on their Title VIII claim, the plaintiffs are entitled to reimbursement of appropriate attorneys' fees under section 3612(c) provided that their present financial status makes it unreasonable to expect them to assume the responsibility of meeting the fees in full.

 The court's opinion holding Hawthorne liable for violating Title VIII found that two of the named plaintiffs in the supplemental complaint had an annual family income of $12,000, and that the third plaintiff's annual income was $14,000. *See Keith,* 618 F.Supp. at 1145. Indeed, the principal basis of Hawthorne's unlawful discrimination against the plaintiffs was their low-income status. *Id.* at 1158–59.

The cost of this litigation was inevitably substantial given the need to develop complex, statistical information to establish a prima facie case of housing discrimination. In declarations to the court, counsel for Hawthorne disclosed that defendants' fees in this matter were over $103,000. Plaintiffs' fees will invariably exceed those of defendants because the plaintiffs must bear "the laboring oar on burdens of proof and presentation." *Burgess v. Premier Corp.,* 727 F.2d 826, 840 (9th Cir.1984).

Balancing the probable financial costs to plaintiffs of pursuing this litigation successfully against their present ability to pay, the court has no difficulty concluding that it would be unreasonable to expect plaintiffs here to assume those costs. Having thus satisfied the statute's ability-to-pay proviso, plaintiffs are entitled to reasonable attorneys' fees under 42 U.S.C. § 3612(c).[1]

## B.

▪ Plaintiffs also prevailed on one of their two California state law claims. *See Keith,* 618 F.Supp. at 1160. Because plaintiffs' relief was based partially on state law, the court must also consider their entitlement to attorneys' fees under relevant state law. *See Alyeska Pipeline Service*

---

1. Although plaintiffs stated four federal causes of action, the court found it unnecessary to rule on the three constitutionally-based causes of action because it found that Hawthorne had violated Title VIII. *See Keith,* 618 F.Supp. at 1147 n. 35. Here, plaintiffs seek attorneys' fees under both 42 U.S.C. § 1988 and 42 U.S.C. § 3612(c). Because the court finds Hawthorne liable for fees under section 3612(c), the court need not reach the question whether *Smith v. Robinson,* 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) bars plaintiffs' recovery of fees under section 1988 for its two section 1983–based claims. No fees' award under section 1988 is available for a violation of the Supremacy Clause. *See White Mountain Apache Tribe v. Williams,* 798 F.2d 1205, 1213 (9th Cir.1986).

*Co. v. Wilderness Society,* 421 U.S. 240, 259 n. 31, 95 S.Ct. 1612, 1622 n. 31, 44 L.Ed.2d 141 (1975); *Lewis v. Anderson,* 692 F.2d 1267, 1270 (9th Cir.1982).

Cal.Code Civ.Proc. § 1021.5 permits an award of attorneys' fees to a successful party "in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any." *See Woodland Hills Residents Association, Inc. v. City Council of Los Angeles,* 23 Cal.3d 917, 933, 593 P.2d 200, 208, 154 Cal.Rptr. 503, 511–12 (1979) (section 1021.5 codifies private attorney general doctrine); *Beach Colony II v. California Coastal Commission,* 166 Cal. App.3d 106, 110–11, 212 Cal.Rptr. 485, 488 (1985).

The court found that Hawthorne had impermissibly discriminated against the plaintiffs on the grounds of low income and race. The California constitution guarantees the right to be free from unequal treatment because of disparities in family income. *See Serrano v. Priest,* 5 Cal.3d 584, 595–96 & n. 11, 487 P.2d 1241, 1249–50 & n. 11, 96 Cal.Rptr. 601, 609–10 & n. 11 (1971). Enforcement of the parallel statutory "important right" in Cal.Gov't Code § 65008 is thus clearly in "the public interest" and undoubtedly confers "a significant benefit on the general public." Vindication of the right to be free from racial discrimination similarly meets these criteria. *See Woodland Hills,* 23 Cal.3d at 935–36; 593 P.2d at 209–10, 154 Cal.Rptr. at 512–13; *see also Beach Colony,* 166 Cal.App.3d at 112, 212 Cal.Rptr. at 489–90 (conferring significant non-pecuniary benefit on some members of public satisfies section 1021.5).

Additionally, the plaintiffs' successful prosecution of this suit helped secure for the public the benefit of the replenishment housing required by the terms of the amended consent decree governing construction of the Century Freeway. Further, according to a declaration by the then Chief Engineer for the Freeway, the plaintiffs' success saved the state a considerable sum of money. The litigation prevented any significant disruption of the Freeway construction schedule which would have occurred because of the need to accommodate alternative housing arrangements for freeway displacees excluded from the Kornblum and Cerise projects by Hawthorne's restrictive zoning.

The second condition of section 1021.5— "the necessity and financial burden of private enforcement are such as to make the award appropriate"—is met when no governmental agency can, or is willing to, protect the plaintiffs' rights, *and* when the litigation costs exceed the plaintiffs' stake in the outcome. *See Beach Colony,* 166 Cal.App.3d at 112–15, 212 Cal.Rptr. at 490–91.

This case met both requirements. First, while the California Department of Housing and Community Development and the California Department of Transportation both intervened on the plaintiffs' side, neither joined all the plaintiffs' claims. More importantly, an uncontradicted declaration by one of plaintiffs' attorneys indicates that the state agencies had both notified the plaintiffs' counsel of the need to file suit and of the agencies' inability to act in a timely manner. The United States made no appearance until the court had issued its ruling. Because local government was the principal defendant in the suit, no local agency could be expected to bring the suit. Second, the financial gain to each plaintiff extended no further than securing the prospect of one good, affordable housing unit in either the Kornblum or Cerise project.

Because the court finds that the plaintiffs have met the requirements of section 1021.5,[2] the court concludes that the plain-

---

**2.** Because the plaintiffs sought, and received, only injunctive relief, subpart (c) is not applicable here.

tiffs should also recover fees under California law.

### C.

Having determined that the plaintiffs are entitled to fees, the court assesses the fees' award according to the well-settled standards followed when assessing fees' awards under 42 U.S.C. § 1988. *DiFilippo v. Morizio,* 759 F.2d 231, 233 n. 1 (2d Cir. 1985) (fee awards under section 3612(c) assessed under same standard as awards under section 1988); *see Hensley v. Eckerhart,* 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 1939 n. 7, 76 L.Ed.2d 40 (1983) ("The standards set forth [for section 1988 awards] are generally applicable in all cases in which Congress has authorized an award of fees to a 'prevailing party.' "). Thus, in determining a reasonable fees' award, the court has followed the approach set forth in *Moore v. Jas. H. Matthews & Co.,* 682 F.2d 830, 840–41 (9th Cir.1982). This approach uses the lodestar analysis of *Lindy Bros. Builders, Inc. v. American Radiator & Standard Sanitary Corp.,* 487 F.2d 161, 167–69 (3d Cir.1973) as a procedure for ordering the twelve factors enumerated in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70, *cert. denied,* 425 U.S. 951, 96 S.Ct. 1726, 48 L.Ed.2d 195 (1976). *See Delaware Valley,* 106 S.Ct. at 3097–98 (endorsing blended lodestar analysis).

### I. *Total Hours*

■ Hawthorne challenges as unreasonable a significant part of the time claimed by the plaintiffs. The court has reduced the total number of hours claimed by 473.-05 hours from 2551.9 hours to 2078.85 hours. This reduction acknowledges the Supreme Court's admonition that a statutory fee request should reflect the "billing judgment" that attorneys routinely exercise in billing private clients. *See Hensley,* 461 U.S. at 434, 103 S.Ct. at 1939; *Planned Parenthood of Central and Northern Arizona v. Arizona,* 789 F.2d 1348, 1352 (9th Cir.1986).

In assessing the reasonableness of the time claimed, the plaintiffs' practice of "se-rial billing" has seriously hampered the court. This practice lumps together as a single claimed item of compensable time all work performed in the same week on the same billable matter. Thus, for example, the plaintiffs claim 8.5 attorney hours spent during the week of April 15 to April 21, 1985 on "prepare for oral argument, conference with ..., file review, exhibits and briefs, read cases, etc." There are numerous serial entries of this kind in the fees' application. The court has no way of knowing how much time was actually spent on each of these individual items. Thus, in determining how many hours the plaintiffs' counsel reasonably spent on this case, the court has, on occasion, had to estimate time actually spent on compensable work reported in a serial entry which also includes work for which the court considers Hawthorne should not reasonably be required to pay. Assessing attorneys' fees incurred in complex litigation is, inevitably, at best an imprecise task. The court's burden is made only more difficult by the need to make an award from over-generalized billing information.

The court has closely scrutinized the many pages of timesheet summaries submitted by the plaintiffs, and has had the benefit both of exhaustive briefing by the parties and extended oral argument on the application. The court has carefully weighed each of the twelve *Kerr* factors against this information, the court's familiarity with this litigation, and the court's experience with similar litigation in Los Angeles.

The court has deleted the following time from the plaintiffs' application because the court does not consider this time to have been reasonably expended in carrying through this litigation.

1. *68.7 hours spent on matters directly related to two court hearings on May 23 and June 4, 1985.*

Plaintiffs originally attempted to prove their case by submitting to the court certain documentary information. The court considered this submission insufficient,

and, because of the public interest inherent in this matter, scheduled two hearings on May 23 and June 4 to provide counsel with the opportunity to offer additional evidence.

The May 23 hearing followed the court's minute order requesting information on the low-income status of freeway displacees in Hawthorne. The court had ruled inadmissible the evidence originally submitted on this issue by plaintiffs. At the May 23 hearing, counsel again presented inadequate evidence. In particular, critical statistical information was inaccurate because of an arithmetical error. The court requested further information in another detailed minute order. The plaintiffs then noticed a hearing to present this information on June 4 over Hawthorne's objections. At the June 4 hearing, the court granted Hawthorne's request for a continuance to prepare an adequate response to the new information obtained by the plaintiffs. As a review of the transcript for the June 4 hearing shows, the court considered unwarranted the plaintiffs' refusal to grant Hawthorne a reasonable continuance. No other business was transacted at the June 4 hearing. In the court's view, plaintiffs cannot reasonably charge to Hawthorne expenses related to these two hearings.

2. *30.75 hours claimed by plaintiff's counsel for time spent at court hearings attended by more than two attorneys.*

■ The court has allowed all time spent in hearings by the principal plaintiffs' attorneys, either alone or together. The court has also allowed time spent at hearings by supervisory counsel with either principal attorney alone. *See Probe v. State Teachers' Retirement System,* 780 F.2d 776, 785 (9th Cir.1986) ("In an important class action litigation ..., the participation of *more than one* attorney does not constitute an unnecessary duplication of effort.") (emphasis added). The court has disallowed as unnecessarily duplicative time claimed by attorneys, paralegals, and legal clerks to attend hearings for which

the court has allowed expenses for two attorneys.

3. *84.7 hours claimed by plaintiffs' attorneys for time spent travelling between meetings.*

■ While the court is aware that some private law firms bill for travel time, many firms do not or charge a reduced rate. Moreover, given the problems created by the use of serial entries and the substantial hourly rates that the court is awarding to the plaintiffs, the court considers it reasonable for a proportion of the time plaintiffs' counsel spent travelling between their Los Angeles office and the federal courthouse to be rounded down and partially absorbed as an overhead within the hourly rate. Additionally, 17.25 of the 84.7 travel hours disallowed under this heading were claimed for travel to court to file documents and similar messenger-type work which private law firms invariably absorb as an overhead and reflect within their hourly rate.

4. *102.75 hours claimed by attorneys, paralegals, and law clerks for clerical, secretarial and similar routine work.*

■ Plaintiffs' application includes such entry items as "pickup copies," "xerox/distribute memo," "tag exhibits," "file review," "organize files," and "reproduce documents." The office overheads reflected in the hourly rate encompass all such routine work.

5. *34.75 hours claimed for unidentified work.*

■ The application includes several vague entries such as "Hawthorne lawsuit," "Hawthorne," "Hawthorne documents," and "legal research." The court will only award fees for work which the court can identify with sufficient certainty.

6. *0.95 hours claimed for work unrelated to this litigation.*

In its reply brief to the court, plaintiffs ask the court to exclude this time as erroneously included in the application.

7. *2.25 hours claimed for work spent on a sixth cause of action which plaintiffs dropped during the pretrial stages of the litigation.*

■■■■ Plaintiffs' sixth cause of action challenged Hawthorne's housing element as violative of state law. While the housing element itself was an important issue before the court, *see, e.g., Keith,* 618 F.Supp. at 1151 & n. 38, the lack of merit in this sixth cause of action is indicated by plaintiffs' unwillingness to press the matter beyond the complaint stage. It is not reasonable to charge Hawthorne for any time expended on this legally unrelated matter simply because plaintiffs prevailed on two of the five other causes of action they pressed at trial.

8. *103.2 hours claimed for time spent in "conferences" by plaintiffs' counsel.*

Hawthorne points out that, not discounting other items appearing in serial entries, plaintiffs' counsel spent over 600 hours in conference, or nearly a quarter of all claimed time. The court's review of the plaintiffs' application shows 257.1 hours in conference time reflected alone by *non-serial* listings in which "conference" was the *sole* activity. Of this time, 103.2 hours involved conferences attended by *at least three* staff members from plaintiff's counsel. Clearly, the word "conference" can mean very different things to different people. Moreover, a "conference" can legitimately cover everything from two people proofreading a document aloud to supervisory conferences between senior and junior attorneys to unavoidable strategy discussions involving all staff who have worked on the litigation.

A declaration submitted by Hawthorne asserts that 39.5 hours, or 3.75 per cent, of the total time billed *to* Hawthorne by *its* counsel involved conference time. Hawthorne urges the court to reduce the plaintiffs' allowable conference time to 95.7 hours, or 3.75 per cent of plaintiffs' total claimed hours for the entire litigation. This would necessitate a reduction of the total claimed hours by a minimum of 161.4

hours and a maximum of 504.4 hours. The court considers that, taking the non-serial conference entries alone, the time claimed for conferences is excessive. However, the court has not adopted Hawthorne's suggestion because there seems to be no reason to assume that plaintiffs' counsel should spend an identical proportion of their time in conference as defendants' counsel. Relying on its own experience of complex litigation and its close familiarity with this litigation, the court considers that a reasonable fees' award requires a reduction of the conference time for which Hawthorne should pay by about 100 hours. Because it is impossible to identify precisely which conference time was reasonably spent and which was excessive from the overgeneralized, serial entry timesheets submitted by plaintiffs, the court has deleted all that time reflected in nonserial entries involving conferences of three or more people. While, admittedly, this is a somewhat rough-and-ready approach, the court believes that the total remaining conference time for which Hawthorne will be liable represents with a fair degree of accuracy a reasonable award to the plaintiffs consistent with the *Kerr* factors and the Supreme Court's guidelines on the need to reflect private sector billing judgment in statutory fees' awards.

9. *45 hours claimed for time spent on work related to facts development and presentation.*

As noted in the court's earlier discussion of the abortive May 23 and June 4, 1985 hearings, the court considered the factual and statistical evidence originally offered to be inadequate. The court therefore directed plaintiffs, through a series of detailed minute orders, to produce additional data which would determine *either way* the validity of plaintiffs' claims. When the additional requested data was available, an important part of the evidence was presented through a summary witness rather than the person who compiled the data. This approach prolonged the trial for several hours.

The court does not consider it reasonable for Hawthorne to pay for all the time claimed for fact development and presentation. While it is difficult to quantify accurately how much of the 90.35 hours claimed for fact development and presentation was excessive, the court considers it reasonable to reduce this claimed time by roughly fifty percent or 45 hours.

Hawthorne also urges the court to delete 86 hours claimed for time spent by plaintiffs *after* the trial. Largely because of the financial uncertainty created by Hawthorne's decision to appeal the court's order, the developers of the Kornblum and Cerise projects indicated their intentions not to proceed to construction. The court retained jurisdiction over the complaint to permit enforcement of the judgment's provisions. *See Keith,* 618 F.Supp. at 1160. Thus the plaintiffs, with the advice and assistance of the California Department of Housing and Community Development, brought several uncontested motions before the court which had the effect of protecting the developers' financial stakes in the projects. As it happened, the Cerise developer withdrew anyway and the project will not go forward. The Kornblum developer later sold his interests to another developer who is proceeding with the project.

■ Hawthorne argues that it acted fully in compliance with the court's judgment, and that it is not reasonable to hold the city liable for fees incurred in protecting private developer interests outside the context of the Title VIII case itself. Hawthorne's argument misses the point. Without the construction of the housing projects, the entire Title VIII case will achieve only a symbolic effect.

Thus, plaintiffs' post-trial efforts were directly related to the underlying case. Because the court found Hawthorne had violated federal and state law in its zoning decisions on these properties, Hawthorne is fully liable for reasonable attorneys' fees incurred in ensuring the effectuation of the rights vindicated by the plaintiffs' suit. *See Delaware Valley,* 106 S.Ct. at 3094–96.

## II. *Hourly Rate*

The plaintiffs have offered affidavits from senior partners in two Los Angeles law firms to support their claimed hourly rates. Hawthorne points out that the claimed rates significantly exceed those paid by Hawthorne to their counsel who have greater or comparable experience. Relying on a recent award in this district, Hawthorne urges the court to award all plaintiffs' attorneys a flat rate of $150 per hour. While this unitary billing system has the appeal of simplicity, the traditional billing arrangement of escalating fees according to skill and experience comports better with the Supreme Court's mandate that reasonable attorneys' fees be calculated according to prevailing market rates in the relevant legal community. *See Blum,* 465 U.S. at 895, 104 S.Ct. at 1547.

■ The purpose of federal fee-shifting statutes is to ensure that private parties can secure their legally-protected rights. *See Delaware Valley,* 106 S.Ct. at 3098. The hourly rates claimed by plaintiffs reflect premium rates charged to substantial corporate clients for mainly commercial matters. The relevant comparable hourly rate here, however, is that appropriate for complex federal litigation of this kind. *See City of Riverside v. Rivera,* —— U.S. ——, 106 S.Ct. 2686, 2695, 91 L.Ed.2d 466 (1986). The court has therefore reduced somewhat the rates claimed by the plaintiffs. In assessing the appropriate hourly rates, the court has relied on its prior fees' orders in the "main" freeway case, the rates awarded in comparable cases, and the court's own experience of legal practice in Los Angeles.

Plaintiffs seek full reimbursement for work performed by unpaid volunteers and by law clerks who were then law students working unpaid for class credit. The court considers that the plaintiffs should receive reimbursement for this work at an hourly rate which fully defrays the additional office costs that unpaid staff incur. The court has fixed this figure at $30 per hour.

The court thus finds the following hours and rates to be fair and reasonable:

| | TOTAL HOURS | × HOURLY RATE | = LODESTAR AMOUNT |
|---|---|---|---|
| Phillips | 92.5 | $180.00 | $ 16,650.00 |
| Hall | 3.25 | 180.00 | 585.00 |
| Lee | 511.55 | 140.00 | 71,617.00 |
| Leyva | 551.9 | 90.00 | 49,671.00 |
| Wiener | 43.0 | 80.00 | 3,440.00 |
| Watson | 352.7 | 50.00 | 17,635.00 |
| Dreyfuss | 145.45 | 30.00 | 4,363.50 |
| Coyoca | 213 | 30.00 | 6,390.00 |
| Tassopulos | 110.5 | 30.00 | 3,315.00 |
| Day | 28.5 | 30.00 | 855.00 |
| Garrett | 26.5 | 30.00 | 795.00 |
| | | | $175,316.50 |

### D.

■ Plaintiffs seek an upward adjustment of the lodestar amount by a multiplier of 1.75. Plaintiffs argue that this multiplier is justified by: the factually intensive nature of the proof; the highly uncertain state of the law in this area; the plaintiffs' inability to finance the litigation; and the highly contingent nature of the litigation when the case commenced.

The Supreme Court has stated that upward adjustments of lodestar figures are permissible "only in certain 'rare' and 'exceptional' cases, supported by both 'specific evidence' on the record and detailed findings" by the district court. *Delaware Valley*, 106 S.Ct. at 3098 (quoting *Blum*, 465 U.S. at 898–901, 104 S.Ct. at 1548–1550). There is "a strong presumption that the lodestar figure ... represents a reasonable fee," *id.*, and that "it is unnecessary to enhance the fee for superior performance" by prevailing plaintiffs' counsel. *Id.* at 3098–99. In *Delaware Valley*, the Court left open for reargument in the 1987 court term whether the contingency of a suit would justify an enhancement of the lodestar figure. *Id.* at 3100.

The court considers that no enhancement is justified here. Factors such as novelty of the issues, quality of representation, and the results obtained are subsumed within the lodestar amount. *Id.* at 3098. The court does not consider any aspect of this case to be so "rare" or "exceptional" as to justify any enhancement under federal law.

Cal.Code Civ.Proc. § 1021.5 provides independent authority for this fee award, and federal law is only of "analogous precedential value in construing section 1021.5." *Serrano v. Unruh*, 32 Cal.3d 621, 639 n. 29, 652 P.2d 985, 997 n. 29, 186 Cal.Rptr. 754, 766 n. 29 (1982). A trial court may enhance the lodestar amount under California law after considering the "novelty and extreme difficulty of the litigation, its extremely contingent character, the significance of the issues determined, and the standard which the award in this case will set for similar awards in future cases." *Serrano v. Priest*, 20 Cal.3d 25, 48, 569 P.2d 1302, 1316, 141 Cal.Rptr. 315, 328 (1977).

After carefully considering the *Serrano* factors, the court concludes that an enhancement of the lodestar figure is not warranted under California law.

### E.

■ Plaintiffs also seek reimbursement of $6,641.29 for out-of-pocket expenses. These expenses include transcribing an administrative hearing, a next-day-delivery deposition surcharge, duplicating, mail, long distance telephone calls, travel mileage, and parking. Uncontroverted declarations submitted by plaintiffs indicate that it is current practice in Los Angeles to bill private clients separately for such expenses. Thus, plaintiffs are entitled to reimbursement under both 42 U.S.C. § 3612(c) and Cal.Code Civ.Proc. § 1021.5 for all such expenses reasonably incurred. *See International Woodworkers of America, Local 3-98 v. Donovan*, 769 F.2d 1388, 1392 (phone calls, postage, air courier, attorney travel expenses, and other costs "ordinarily billed to a client" routinely allowable under fee shifting statutes), *amended* 792 F.2d 762 (9th Cir.1985); *Sierra Club v. E.P.A.*, 769 F.2d 796 at 812 (awarding costs for photocopying, postage, and telephone expenses).

Hawthorne correctly points out that, in a fees' award in the "main" freeway case in

1980, the court denied a claim for expenses for mailing, duplicating, long distance telephone calls and secretarial overtime. *See Keith*, 501 F.Supp. at 415. However, *International Woodworkers* demonstrates that the court's 1980 ruling does not reflect current Ninth Circuit law. *See International Woodworkers*, 769 F.2d at 1392.

Hawthorne also challenges the secretarial cost of producing the administrative transcript ($1275.00). The transcript was an important piece of evidence, *see Keith*, 618 F.Supp. at 1140–42, and, given the circumstances of time constraints and poor quality of the tapes of the administrative proceeding, it was not unreasonable for plaintiffs' counsel to transcribe in-house rather than employ an outside secretarial service. Similarly, in the circumstances, it was not unreasonable to require next-day delivery, for which a surcharge ($470.05) was paid, of a deposition hearing directly relevant to an issue to be litigated in court a few days after the noticed date of the deposition.

Plaintiffs originally included the transcript cost and deposition surcharge in their costs' bill. The clerk reviewing the costs' bill denied both these items and the plaintiffs did not file any motion to retax. Hawthorne argues that plaintiffs have resuscitated these claims now to circumvent the clerk's earlier refusal to pay the items as costs. Since both items were reasonably incurred and are customarily billed separately to private clients, they are appropriately reimbursable now as out-of-pocket expenses notwithstanding their prior unsuccessful inclusion in a costs' bill.

### F.

Therefore, IT IS HEREBY ORDERED that the defendants on the supplemental complaint, City of Hawthorne, shall pay plaintiffs' counsel, the Center for Law in the Public Interest, the total sum of $181,-957.79 plus interest at the legal rate from the date of entry of this order.

The Clerk of the Court shall serve copies of this Order, by United States mail, upon the parties appearing in this cause.